OPINION
{¶ 1} This case is before us on the appeal of Terrance Demont Little from his conviction and sentence for possession of crack cocaine. In support of the appeal, Little contends in a single assignment of error that "the trial court erred to Appellant's prejudice in finding that Appellant lacked standing to challenge the warrantless search of the apartment in which he was arrested." After considering the record and applicable law, we find the assignment of error without merit. Accordingly, the judgment of the trial court will be affirmed.
 {¶ 2} Little pled no contest to the possession charge after the trial court overruled his motion to suppress evidence. The only individuals who testified at the suppression hearing were two arresting officers and the tenant listed on a lease agreement for the apartment in which the arrest was made. Little did not testify. The evidence at the hearing indicated that on November 27, 2002, Dayton police officer, Jeff Hieber, was called to the County Woods Apartment complex on a report that someone was driving a car erratically in the parking lot. When Hieber arrived, however, the individual was gone. Hieber then began to talk to the complex manager about problems she was having with different tenants.
 {¶ 3} The manager told Hieber that drug activity was suspected at 3920 Cornell Woods, Apt. 3. According to the manager, the tenant on the lease (a Ms. Heath) had moved from the apartment. In fact, Heath had sent the manager a letter, stating that she was breaking the lease and had moved out all of her furniture. The manager told Hieber that people were coming and going from the apartment at all hours, and that the people who were there were trespassing. The manager gave Hieber the letter and asked him to remove the trespassers. Hieber was also given a key to the apartment.
 {¶ 4} Hieber returned to the station to consult with two senior officers. Hieber and the senior officers (Oldham and Lock) then went to 3920 Cornell Woods, Apt. 3. Hieber knocked on the door, turned the key, and all three officers entered. When they went in the door, they saw an individual (who turned out to be Little), sitting on a couch. Little was crouching over a table on which there were scales and a large amount of what appeared to be crack cocaine. Upon seeing the officers, Little stood up and threw a baggy of the cocaine against the wall to his right. Little then ran into a back room adjacent to the kitchen. Two other people, a man and a woman, were on the couch in that room. The officers subsequently arrested all three people.
 {¶ 5} The letter in question had been written by Heath, the tenant who was listed on the lease agreement for the apartment. Little happened to be Heath's ex-boyfriend. About two weeks before the arrest, Heath and Little argued because Little had another girlfriend. Up to that point, Little and Heath had an understanding that Little could come and go as he pleased. Heath did not give Little a key, but he apparently took the spare key for the apartment. Little had stayed overnight in the apartment at times, but he did not keep clothing at the apartment, nor did he pay for rent, utilities, or food. Heath paid the rent for October, but did not pay the rent that was due for November. When Heath found out Little was cheating on her, she decided that she was going to leave, and she wanted him out of the apartment. Heath then wrote the letter, stating that she no longer lived at the apartment and had made attempts to get her ex-boyfriend (whom she purposely misidentified as "Mr. Smalls") to leave. Heath's explanation was that she wanted Little out of the apartment, but did not want him to get in trouble. As a result, she changed his name from "Little" to "Smalls."
 {¶ 6} After Heath left the apartment, she and Little reconciled "off and on." They met at the apartment a few times, but it did not really appear to Heath that Little had been staying there. Heath was under the impression that Little was staying at his mother's house. If she needed to contact him, she called his cell phone.
 {¶ 7} Based on the above facts, which were essentially unchallenged, the trial court found that Little did not have a reasonable expectation of privacy in the premises, and, therefore, had no standing to assert a Fourth Amendment violation. Little claims the trial court erred by failing to focus on Little's "subjective" expectation of privacy. In this regard, Little stresses that when the officers entered, he was seated in a completely furnished apartment. Little also claims he had permission from the tenant to be there.
 {¶ 8} When we review motions to suppress, we "are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford (1994),93 Ohio App.3d 586, 592.
 {¶ 9} A defendant who challenges a search or seizure on Fourth Amendment grounds must have a legitimate expectation of privacy in the area that is searched. In addition, the defendant has the burden of proving facts justifying the expectation.State v. Williams (1995), 73 Ohio St.3d 153, 166. Because this expectation is particular to a specific defendant, it is obviously subjective. However, "[a] subjective expectation of privacy is legitimate only if it is `"`one that society is prepared to recognize as "reasonable.'"'" Minnesota v. Olson
(1990), 495 U.S. 91, 95-96, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85
(citation omitted).
 {¶ 10} The defendant in Olson was an overnight guest, and the court held that such a status alone indicates an expectation of privacy that society is prepared to recognize.495 U.S. at 96-97. Subsequently, however, the United State Supreme Court held that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." Minnesota v. Carter
(1998), 525 U.S. 83, 90, 119 S.Ct. 469, 473, 142 L.Ed.2d 373.
 {¶ 11} In the present case, Little did not fit within either of the above categories. While Little might have been considered an overnight guest in the past, he did not have permission to be on the premises at the time of his arrest. Little claims in his brief that he had permission, but the evidence clearly indicates that Heath withdrew her permission when she vacated the premises and told the landlord that she had tried to remove her ex-boyfriend from the apartment. Furthermore, although the couple apparently reconciled "off and on" after Heath left, Heath only met Little at the apartment a few times. She was not under the impression that Little lived there. Instead, she thought that Little lived at his mother's home. Furthermore, Heath never testified that Little had permission to be there after she moved out.
 {¶ 12} Because Little did not have permission to be in the apartment, his status was simply that of a trespasser. This is not a category society accepts as conveying a legitimate expectation of privacy. Accordingly, the trial court was correct when it found that Little did not have standing to assert a Fourth Amendment claim.
 {¶ 13} As an additional matter, the police reasonably believed that the manager of the complex had authority to consent to their entry. Their warrantless entry was, therefore, valid. See Illinois v. Rodriguez (1990), 497 U.S. 177, 182-189,110 S.Ct. 2793, 2798-2802, 111 L.Ed.2d 148 (holding that a warrantless entry is valid if it is based on the consent of a third party whom the police reasonably believe has authority over the premises. This is true even if the third party, in fact, does not have such authority). In light of Officer Hieber's discussion with the apartment manager, and the letter indicating that Heath had broken her lease and did not give anyone else permission to use the apartment, Officers Hieber, Oldham, and Lock acted reasonably in believing that the manager had authority over the apartment. Contrast State v. Hawkins, Greene App. No. 2002-CA-85, 2003-Ohio-1851, ¶ 22 (invalidating a warrantless entry where the police made only a feeble attempt to ascertain an individual's authority to consent to their entrance).
 {¶ 14} Notably, this type of consent only allows officers to enter the premises. It does not permit them to begin searching or to enter other rooms. State v. Moncrief (Oct. 2, 1998), Montgomery App. No. 16847, 1998 WL 677229, *3. However, once the officers lawfully entered Heath's apartment, the evidence of criminal activity was in plain view. Id.
 {¶ 15} Because the trial court correctly rejected the motion to suppress, the single assignment of error is without merit and is overruled. Accordingly, the judgment of the trial court is affirmed.
Judgment affirmed.
Grady and Young, JJ., concur.