The STATE OF OHIO, Appellee,

v.

DENNIS, Appellant.

[Cite as *State v. Dennis,* 182 Ohio App.3d 674, 2009-Ohio-2173.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22659.

Decided May 8, 2009.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Kelly D. Crammer, Assistant Prosecuting Attorney, for appellee.

Eric A. Stamps, for appellant.

FROELICH, Judge.

{¶ 1} Vonnis L. Dennis pleaded no contest to possession of crack cocaine, in an amount less than one gram, after the Montgomery County Court of Common Pleas overruled his motion to suppress evidence. The trial court found him guilty and sentenced him to five years of community control, suspended his driver's license for six months, and ordered him to pay court costs. Lewis appeals from the denial of his motion to suppress. For the following reasons, the trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

I

{¶ 2} Dayton Police Officer Mark Kinstle was the state's sole witness at the suppression hearing. His testimony established the following facts.

{¶ 3} On August 17, 2007, Kinstle and his partner, Officer Jon Zimmerman, were dispatched to 1719 Radio Road on a report that a female dressed in a pink shirt and jean shorts was trespassing inside a vacant apartment. The apartment complex is located in a high-crime area that is known for drug use, weapons, and prostitution. Kinstle indicated that vacant apartments are commonly used as "smokehouses," where drug users go to smoke crack cocaine.

{¶ 4} When Kinstle and Zimmerman arrived at 1719 Radio Road, they encountered three women sitting on the front step to the building. None of the women matched the description given of the woman in the dispatch. The officers tried to enter the apartment building through the front security door, but the door was locked. The officers then spoke with the three women, one of whom claimed to be a resident. The woman told the officers that Apartment F was the only vacant apartment in the building. The woman stated that the occupant, "Dennis," had been evicted and the apartment was supposed to be vacant. At the officers' request, the woman used her access card or "key fob" to open the security door.

{¶ 5} Kinstle and Zimmerman went directly to Apartment F, "knocked on the door a couple of times, not very long, and then checked to see if the door was unlocked, and it was." Zimmerman opened the door slowly. As the door opened, Kinstle was able to see into the apartment's kitchen. He observed that all of the kitchen cabinets were open and empty, the refrigerator door was open, and parts of the refrigerator were lying on the floor. Kinstle described the scene as "typical of what you'd expect in a vacant apartment."

{¶ 6} Once the door was fully open, Kinstle was able to see into the living-room area, and he observed Dennis sitting in a La–Z–Boy chair. Dennis looked over and saw the officers. He immediately stood up and made a noticeable movement to the right with his right hand. Dennis then began to move to the center of the room, which was out of the view of the officers due to a wall. Kinstle thought that Dennis was either going to run, to hide something, or to retrieve a weapon.

{¶ 7} Believing Dennis to be a trespasser, Kinstle and Zimmerman entered the apartment and told Dennis to "stop" or "hold." At that point, Dennis was standing by a console table with his hand over the table as if he had dropped something behind it or was trying to retrieve something. Zimmerman grabbed Dennis, while Kinstle looked on the floor behind the table. Kinstle did not see anything there. Zimmerman told Kinstle that he had seen Dennis put his hand inside a large, open bag of potato chips on the table, and he suggested that

Kinstle look inside the bag. Kinstle looked inside the bag and observed a glass crack pipe with a piece of crack cocaine.

{¶ 8} Zimmerman handcuffed Dennis, and Kinstle informed him of his *Miranda* rights. Dennis acknowledged that he understood his rights. The officers then asked Dennis whether he had been evicted from the apartment. Dennis did not respond. When the officers asked him again, Dennis replied, "Yes, I was."

{¶ 9} Kinstle and Zimmerman walked through the apartment to see whether anyone else was present. No other individuals were there. Kinstle described the apartment as vacant, except for the chair, a small television, the console, a purse in the living room, and a bed in a back room.

{¶ 10} After Dennis was arrested, Kinstle knocked on Apartment A to see whether the tenant had a telephone number for the landlord. The woman informed the officer that she had placed the call to the police and that she was "sort of the caretaker of the building" when the landlord was not there. The officer said this conversation was done "mainly [as part of] the trespass investigation to see if he [Dennis] had any reason to be there, if he was legally evicted." The woman stated that the landlord had told her to call the police if Dennis returned to the apartment, because Dennis had been given an eviction notice and had not been at the apartment for a week. The landlord believed that Dennis had vacated the apartment, but she had not yet cleaned out the apartment or changed the locks because she was on vacation.

{¶ 11} When Kinstle later spoke with the landlord, Roberta Maglie (phonetic spelling), Maglie informed him that she believed Dennis had vacated the apartment. Maglie told Kinstle that she had served Dennis with an eviction notice, that Dennis had cleaned out the apartment, and that she had not seen him for a week. Kinstle testified that he had noticed a three-day eviction notice in the apartment, but did not testify as to any dates on the notice.

{¶ 12} Dennis also testified to the events that occurred at the apartment. Dennis asserted that he was asleep when the officers entered his apartment. Dennis awoke when he heard someone approaching him, and he saw one police officer standing approximately ten feet from him. When Dennis stood up, the officer told him to "hold it, don't move." Dennis stated that the officers then questioned him about whether he had been evicted, and Dennis told them that he was in the process of moving. Dennis testified that he had received a 30–day eviction notice in late July 2007 and later a three-day notice. Dennis asserted, however, that the three days had not expired on or before August 17, 2007. Dennis further testified that a female acquaintance had visited him in the apartment earlier that day and that the potato chips and crack pipe belonged to her.

{¶ 13} On September 24, 2007, Dennis was indicted for possession of crack cocaine in an amount less than one gram, in violation of R.C. 2925.11(A). Dennis subsequently moved to suppress the evidence seized as a result of the officers' entry into the apartment. Dennis's motion to suppress included a memorandum that referred to a "Montgomery County Sheriff's Deputy," whereas only Dayton Police Department officers were involved in this case, and cited case law relevant in only the most generous use of that term. Nonetheless, the motion did seek to suppress evidence "obtained from Defendant as a result of the warrant less [sic] entry into a residence," so the state was on notice as to the basis for the motion.

{¶ 14} On December 5, 2007, the court held a hearing on the suppression motion. At the beginning of the hearing, the state asserted that Dennis lacked standing to challenge the entry into the apartment. The parties and the court agreed to "conclude all of it at once," and the state went forward.

{¶ 15} Upon consideration of the testimony, the trial court overruled Dennis's motion to suppress. The court credited Kinstle's testimony and "adopt[ed] that testimony as to the events as they occurred." The court concluded that Dennis had no legitimate expectation of privacy in the apartment and that he lacked standing to challenge the officers' search of the apartment, because Dennis was a trespasser at the time that Kinstle and Zimmerman entered the apartment. The court further determined that "upon observing Dennis and his furtive activity upon the officers' entry into the apartment," the officers had probable cause to arrest Dennis for trespassing and that based on the officers' observations that Dennis had dropped something into the open bag of potato chips, Kinstle properly looked into the open bag, where he observed readily apparent contraband. The court thus concluded that Kinstle's seizure of the crack pipe and crack cocaine was lawful.

{¶ 16} Dennis appeals from the denial of his motion to suppress, raising two assignments of error.

## II

{¶ 17} Dennis's first assignment of error states:

{¶ 18} "The trial court erred in determining that appellant was a trespasser and lacked standing to suppress the entry into his apartment and subsequent search of the premises."

{¶ 19} Dennis claims that the trial court erred in determining that he was a trespasser and in concluding that he lacked standing to challenge the entry into the apartment. He argues that he could not be considered a trespasser at his apartment until a court entered an order of restitution of the premises to the landlord in a civil action, pursuant to R.C. Chapter 1923. Dennis further asserts

that the circumstances of this case are distinguishable from *State v. Little*, Montgomery App. No. 19976, 2004-Ohio-1814, 2004 WL 758395, and *State v. Fleming*, Clark App. No. 2003 CA 71, 2004-Ohio-5278, 2001 WL 34664610, upon which the trial court relied to support its conclusion that Dennis was a trespasser and lacked standing to object to the officers' entry into the apartment.

{¶ 20} In reviewing the trial court's ruling on a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. See also *State v. Morgan* (Jan. 18, 2002), Montgomery App. No. 18985, 2002 WL 63196. However, "the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." Id.

{¶ 21} The Fourth Amendment to the United States Constitution secures an individual's right to be free from unreasonable searches and seizures. Fourth Amendment rights are personal in nature, and they may not be asserted vicariously by third parties. *Rakas v. Illinois* (1978), 439 U.S. 128, 133–134, 99 S.Ct. 421, 58 L.Ed.2d 387. "A person aggrieved by the introduction of evidence secured by an illegal search of a third person's premises or property has not suffered any infringement upon his Fourth Amendment rights." *State v. Henderson*, Montgomery App. No. 22062, 2008-Ohio-1160, 2008 WL 698938, ¶ 9, citing *Rakas* at 134, 99 S.Ct. 421, 58 L.Ed.2d 387. Consequently, the person challenging the legality of a search bears the burden of proving that he has a legitimate expectation of privacy in the place searched that society is prepared to recognize as reasonable. *Rakas* at 143, 99 S.Ct. 421, 58 L.Ed.2d 387; *State v. Williams* (1995), 73 Ohio St.3d 153, 166, 652 N.E.2d 721. The individual must have a subjective expectation of privacy in the place searched, and that expectation must be objectively reasonable and justifiable. *Rakas* at 143, 99 S.Ct. 421, 58 L.Ed.2d 387; *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, 860 N.E.2d 1006, ¶ 14.

{¶ 22} It is well established that a tenant has an expectation of privacy in his or her rented apartment. "Because the right to exclude others is one of the main rights attaching to property, tenants in lawful possession of a home or apartment generally have a legitimate expectation of privacy by virtue of having a property interest in a specific piece of real estate." *Higgins v. Penobscot Cty. Sheriff's Dept.* (June 2, 2005), D.Maine No. 04–157–B–W, 2005 WL 1331200, 2005 WL 1331202. See also *Copley v. Voorhies* (Aug. 27, 2007), S.D.Ohio No. 2:06–cv–847, 2007 WL 2462651, citing *Rakas*, 439 U.S. at 143, 99 S.Ct. 421, 58 L.Ed.2d 387, fn. 12 ("An individual has a 'legitimate expectation of privacy' and, therefore, standing to challenge law enforcement's warrantless search on property that the individual lawfully possesses").

{¶ 23} In evaluating whether Dennis had a legitimate expectation of privacy in the apartment, the trial court relied upon *Little* and *Fleming,* in which we held that the defendants had no legitimate expectation of privacy in the premises, because they were trespassers at the time of the officers' entry. In *Little,* the defendant, in the past, had been an overnight guest in his girlfriend's apartment. However, at the time officers entered the apartment, the girlfriend had vacated the apartment and had told the landlord that she had tried to remove her boyfriend from the apartment. We affirmed the trial court's conclusion that Little lacked standing to bring a Fourth Amendment challenge, because "his status was simply that of a trespasser" when the officers entered the apartment.

{¶ 24} In *Fleming,* the defendant was a paying hotel guest at the time of the search. However, prior to the officers' entry into the hotel room, the hotel manager had twice asked Fleming and the other occupants to vacate the premises. We concluded that the manager's request constituted an eviction from the hotel room and that Fleming lost his possessory interest in the room. Accordingly, when the officers entered the room, Fleming's status was that of a trespasser with no legitimate expectation of privacy. See also *United States v. Allen* (C.A.6, 1997), 106 F.3d 695 (stating that a motel occupant's reasonable expectation of privacy in his motel room ended when the rental period expired or the motel manager otherwise took possession of the room).

{¶ 25} Although the defendants in *Little* and *Fleming* were not former or current tenants of an apartment, such as Dennis, both cases instruct that once an individual becomes a trespasser, the individual loses any legitimate expectation of privacy that he once had in the premises. However, as neither a social guest nor a hotel guest has the statutory protections against eviction that a tenant has, *Little* and *Fleming* are not controlling for determining whether Dennis had become a trespasser.

{¶ 26} We therefore turn to whether Dennis retained a reasonable expectation of privacy in Apartment F when the officers entered without a warrant on August 17, 2007. Dennis claims that the evidence was insufficient to establish that he was a trespasser—and, consequently, that he no longer had a reasonable expectation of privacy—because he was still in "lawful possession" of the apartment since there was no evidence that the proper legal procedures for eviction had been completed under R.C. Chapter 1923.

{¶ 27} "[C]oncepts of state property law are relevant, but not necessarily dispositive, for deciding the question whether there was a legitimate privacy interest for [F]ourth [A]mendment purposes." *United States v. Sledge* (C.A.9, 1981), 650 F.2d 1075, 1082.

{¶ 28} "[I]t is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical." *Jones v. United States* (1960), 362 U.S. 257, 266, 80 S.Ct. 725, 4 L.Ed.2d 697, overruled on other grounds by *United States v. Salvucci* (1980), 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619. See also *Georgia v. Randolph* (2006), 547 U.S. 103, 110, 126 S.Ct. 1515, 164 L.Ed.2d 208 (stating that "Fourth Amendment rights are not limited by the law of property").

{¶ 29} At the same time, "[a]lthough property [law] concepts are not necessarily determinative of Fourth Amendment rights, they are nonetheless helpful in assessing which expectations society is prepared to recognize as legitimate. In particular, a tenant's expectation of privacy in his apartment ceases to be 'objectively justifiable' when his occupancy ceases to be lawful, as determined by the terms of his lease and the provisions of his state's landlord-tenant law." (Citations omitted.) *United States v. Ross* (C.A.6, 2002), 43 Fed.Appx. 751, 757.

{¶ 30} Under Ohio law, a landlord must follow a three-step process to evict a tenant. "First, the landlord must serve the tenant with a notice to terminate the tenancy. R.C. 5321.17. Second, a timely notice to vacate the premises must be served on the tenant. R.C. 1923.04. Third, the landlord must file a complaint in forcible entry and detainer. R.C. 1923.05." *Steiner v. Minkowski* (1991), 72 Ohio App.3d 754, 761, 596 N.E.2d 492.

{¶ 31} It is undisputed that Dennis had been a tenant of 1719 Radio Road, Apartment F, and he was found at the apartment on August 17, 2007. The record established, however, that Dennis had received two eviction notices, one of which (the three-day notice) had been seen by Kinstle in the apartment. Dennis acknowledged that he had received both a 30–day eviction notice and a three-day eviction notice, and he stated to the officers that he had been "evicted." According to Dennis's landlord, the apartment had not been cleaned and the locks had not been changed simply because the landlord was on vacation. The "unofficial" caretaker had been instructed to call the police if Dennis returned.

{¶ 32} In our view, Dennis met his burden of establishing that he had lawful possession of the apartment. While the evidence indicated that Dennis was a tenant of Apartment F and that he had been ordered to leave the apartment by the landlord, "he didn't say anything about when he was supposed to leave." Dennis's statement that he had been "evicted" is simply his vernacular acknowledgment that he had been served with eviction notices. There was no evidence before the court demonstrating that his tenancy had expired. The fact that

Dennis had a tenancy interest in the apartment was sufficient to demonstrate that he had lawful possession of the apartment and, thus, a reasonable expectation of privacy.

{¶ 33} Although the trial court found that Dennis had been served with eviction notices, this evidence was insufficient to rebut the evidence that Dennis had lawful possession of the apartment and retained a reasonable expectation of privacy in the premises. Ohio landlord-tenant law does not allow for "self-help" by a landlord. As stated above, a landlord is required to successfully bring a forcible entry and detainer action against Dennis in order to effectuate an eviction. Without a judgment of restitution in the landlord's favor, Dennis could continue to lawfully possess the premises. See *State ex rel. Jenkins v. Hamilton Cty. Court, Area No. Eight* (1961), 114 Ohio App. 231, 233, 19 O.O.2d 106, 173 N.E.2d 186 (forcible entry and detainer action determines the right to immediate possession of the property); R.C. 1923.09, 1923.11, 1923.13, and 1923.14.

{¶ 34} This is not to say that a tenant has the right in all circumstances to remain in an apartment—and to enjoy a reasonable expectation of privacy that society is prepared to recognize—once he has been served with the required notices and papers. Rather, although there is a paucity of Ohio law on this subject, it is to hold that it is certainly not the prerogative of a landlord, unilaterally, by the simple delivery of civil notices available at any convenience store or over the internet, to remove a tenant's reasonable expectation of privacy. A tenant, having received such papers, may think that he can pay back rent (if that is the reason for the notices) and stay, may realize that his lawful presence in the apartment will soon be terminated, or may decide just to leave on his own, but he does not reasonably expect that he has immediately been transformed into a trespasser and that the landlord or the police or anyone else can enter his apartment. Accordingly, in order to refute evidence that Dennis was a lawful tenant, the state was required to present some evidence that Dennis was legally a trespasser. No such evidence was presented.

{¶ 35} While Dennis's property rights are not determinative of his Fourth Amendment rights, we conclude that in the absence of evidence that he had been lawfully ejected from the apartment, Dennis could not properly be considered a trespasser in his apartment solely due to his receipt of eviction notices. See, for example, *Schneider v. State* (Sept. 3, 2003), Ark.App. No. CACR 02–771, 2003 WL 22052832 (holding that under state law, the defendant-tenant retained an expectation of privacy in the residence, even though lease had expired, when landlord had not evicted the tenant by the statutorily required legal process subsequent to the expiration of the lease).

{¶ 36} Moreover, the facts that Dennis had some possessions in the apartment and he was found sitting there indicate that Dennis also subjectively retained an interest in the apartment.

■ {¶ 37} The state asserts that Dennis nevertheless had no legitimate expectation of privacy in this apartment, because he abandoned the property prior to August 17, 2007. As we stated in *State v. Russell,* Montgomery App. No. 21458, 2007-Ohio-137, 2007 WL 93202:

■ {¶ 38} "It has long been settled that '[a] defendant has no standing under the Fourth Amendment to the United States Constitution to object to a search and seizure of property that he has voluntarily abandoned.' *State v. Freeman* (1980), 64 Ohio St.2d 291 [18 O.O.3d 472], 414 N.E.2d 1044, paragraph two of the syllabus. As the Ohio Supreme Court has reiterated:

■ {¶ 39} " 'Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. *United States v. Cowan* (C.A.2, 1968), 396 F.2d 83, 87. All relevant circumstances existing at the time of the alleged abandonment should be considered. *United States v. Manning* (C.A.5, 1971), 440 F.2d 1105, 1111. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *United States v. Edwards,* supra, 441 F.2d at 753; *Katz v. United States* (1967), 389 U.S. 347, 83 [88] S.Ct. 507 [19 L.Ed.2d 576].' Id. at 297 [18 O.O.3d 472, 414 N.E.2d 1044], quoting *United States v. Colbert* (C.A.5, 1973), 474 F.2d 174, 176." *Russell,* 2007-Ohio-137, 2007 WL 93202, at ¶ 21–22.

■ {¶ 40} Stated simply, once a tenant has surrendered or abandoned his or her apartment, the tenant no longer has a reasonable expectation of privacy in the premises. See *Russell.* If the tenant subsequently returned, his status would be that of a trespasser.

■ {¶ 41} The government bears the burden of establishing, by a preponderance of the evidence, that the defendant abandoned the property at issue. *State v. Dubose,* 164 Ohio App.3d 698, 2005-Ohio-6602, 843 N.E.2d 1222, ¶ 43.

{¶ 42} At the suppression hearing, the state presented the landlord's statements, through Officer Kinstle, that Dennis had cleaned out the apartment and had not been seen at the apartment for a week. Kinstle had also testified that the apartment was "typical of what you'd expect in a vacant apartment." No moving boxes were present and a few random pieces of furniture remained. The landlord assumed that all remaining property had been abandoned.

{¶ 43} We do not find that the facts support the conclusion that Dennis abandoned the apartment. Significantly, Dennis was found inside the apartment sitting in a La–Z–Boy chair. This fact alone suggests that Dennis did not intend to abandon the apartment and the property within it. Even accepting that Dennis had not been seen at Apartment F for a week, a brief absence from a residence does not constitute abandonment, particularly when the resident returns. Moreover, the fact that Dennis had moved most of his possessions to another apartment did not establish that he no longer had an expectation of privacy in the apartment, particularly when he continued to have a lawful possessory interest in the property.

{¶ 44} The trial court erred in concluding that Dennis was a trespasser in his apartment when the officers entered on August 17, 2007. Accordingly, Dennis was entitled to contest the officers' entrance into and search of the apartment under the Fourth Amendment.

{¶ 45} Dennis's first assignment of error is sustained.

### III

{¶ 46} Dennis's second assignment of error states:

{¶ 47} "The opening of appellant's door and entrance into his apartment violated his Fourth Amendment constitutional rights."

{¶ 48} In his second assignment of error, Dennis claims that the officers' entry into his apartment violated his Fourth Amendment rights, because the officers lacked a justifiable basis for entering the apartment without a warrant. The state responds that the officers' entry into the apartment was based on an objectively reasonable belief that the apartment was vacant and, thus, the evidence seized did not need to be suppressed.

{¶ 49} The trial court's decision dealt mainly with standing and with the officers' actions once they entered the apartment, but the question of the lawfulness of the entry was clearly before the court by way of the original motion, the evidence, and the arguments. For example, the defense counsel stated that "even if the court finds they had reason to enter the apartment" and the prosecutor argued that "these officers acted reasonably in entering that apartment to pursue the trespass complaint."

{¶ 50} The state's argument is based on the "reasonable belief" portion of the consent exception to the warrant requirement, which was first articulated in *Illinois v. Rodriguez* (1990), 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148. *Rodriguez* held that the police officers' warrantless search of a residence was valid when the consent to search was given by the defendant's girlfriend, whom the police reasonably—but erroneously—believed had common authority to give

consent. In reaching this conclusion, the court emphasized that the essence of the Fourth Amendment is to protect citizens against "unreasonable" searches and seizures. Id. at 183, 110 S.Ct. 2793, 111 L.Ed.2d 148. The court continued:

{¶ 51} "It is apparent that in order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable." Id. at 185, 110 S.Ct. 2793, 111 L.Ed.2d 148.

{¶ 52} The court therefore concluded that so long as the police reasonably believed that the defendant's girlfriend had the authority to consent to the search, no Fourth Amendment violation had occurred.

{¶ 53} The state asserts that we applied *Rodriguez* in *State v. McKinley,* Montgomery App. No. 21668, 2007-Ohio-3705, 2007 WL 2070358, in which, according to the state, we upheld the police officers' warrantless entry into a house under circumstances similar to those presented in this case. In *McKinley,* Dayton police officers responded to a "burglary in progress" call and were met by a woman who claimed to own the property. The woman indicated that the house was supposed to be vacant, but a white male had broken in and entered through the rear of the house. The officers walked around the back and noticed that the exterior door on the second floor was open. Upon going inside, one officer observed a large marijuana-growing operation, and he encountered a man in an office chair who claimed to live there. The man provided identification that indicated that his residence was at that address.

{¶ 54} We affirmed that trial court's denial of McKinley's motion to suppress based on his assertion that the officers lacked exigent circumstances to enter the home. Citing *Rodriguez,* we stated that "the police acted reasonably in relying on the woman's representation." We reasoned:

{¶ 55} "There was nothing in the surrounding circumstances that suggested that the officers should have doubted the woman's assertions that she owned the property, that it was supposed to be vacant and that an intruder was on the premises. In short, it was objectively reasonable for the officers *to rely on her permission* to enter the house to capture the suspected intruder." (Emphasis added.)

{¶ 56} The present case is not directly analogous to *McKinley* because, as in *Rodriguez,* the police officers in *McKinley* had a reasonable, good-faith belief that they had received consent to enter the premises from a person with apparent authority to give such consent. That is not the case here.

{¶ 57} The Supreme Court has set forth a "good faith" exception to the exclusionary rule and has repeatedly held in warrant situations that the exclusionary rule does not apply when, viewing the circumstances objectively, the police officers reasonably relied on mistaken information. See, e.g., *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (holding that the exclusionary rule did not bar evidence obtained in accordance with a facially valid search warrant that was later invalidated); *Arizona v. Evans* (1995), 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (holding that the exclusionary rule did not apply when officers reasonably relied on an arrest warrant that was later determined to be erroneous due to mistakes by court employees); *Herring v. United States* (2009), —— U.S. ——, 129 S.Ct. 695, 172 L.Ed.2d 496 (holding that exclusionary rule did not apply when the arrest was based on a mistaken belief that an arrest warrant was outstanding, when another officer had negligently failed to update records). However, the good-faith exception has been applied "almost exclusively in the context of a search pursuant to a search or arrest warrant that is later found defective." *State v. Simon* (1997), 119 Ohio App.3d 484, 488, 695 N.E.2d 814.

{¶ 58} We need not resolve whether *Rodriguez* should be extended or the good-faith exception should apply when police officers reasonably, but mistakenly, believe that a residence is vacant and thus no one has a reasonable expectation of privacy in it. Even assuming, arguendo, that an exception allowed the officers to "reasonably rely" on information that Dennis's apartment was vacant, the facts of this case also do not support applying any such exception.

{¶ 59} Here, the officers responded to 1719 Radio Road on an anonymous call that a female was inside a vacant apartment in the building. Upon arriving, the officers met a woman who claimed to be a resident of the building. Kinstle testified to their conversation as follows:

{¶ 60} "And we asked her if there were any vacant, recently evicted apartments in the building. She stated there was only one and it was Apartment F. And she even said that the guy's name was 'Dennis' is what she said it. She said, and he's been evicted so the apartment is supposed to be vacant, is what she told us."

{¶ 61} Although the dispatch informed the officers that a female trespasser was located in a vacant apartment, the officers had no information about the individual who called them. Consequently, the police had no way to assess the reliability of the information contained in the dispatch. The woman who let the officers into the building with her key appeared to substantiate the information that there was a vacant apartment. However, the woman was not the landlord, the officers did not know her, and she did not tell the officers how she knew that Dennis had been "evicted" and that the apartment was supposed to be vacant.

{¶ 62} The officers received an anonymous call about a female trespasser inside a vacant unit at an apartment building; upon arrival, an unknown woman who appeared to be a resident of the building told them there was only one vacant unit and that the former occupant had been evicted. The officers knocked on the door, and no one immediately answered. Without more information about the source of the unknown resident's information or additional information to substantiate the report that the apartment was vacant, the officers could not reasonably conclude that Apartment F was vacant.

{¶ 63} The core of the Fourth Amendment is that an infringement of an individual's reasonable expectation of privacy requires a warrant or, at least, probable cause or a recognized exception to this requirement. While "these exceptions are neither few nor well-delineated," Bradley, Two Models of the Fourth Amendment (1985), 83 Mich.L.Rev. 1468, 1473, cited in *California v. Acevedo* (1991), 500 U.S. 565, 582, 111 S.Ct. 1982, 114 L.Ed.2d 619 (Scalia, J., concurring), they are still just that—exceptions. The officers' entry into the apartment did not fall under any exception to the Fourth Amendment or its remedy, the exclusionary rule.

{¶ 64} Dennis's second assignment of error is sustained.

## IV

{¶ 65} Having sustained both assignments of error, we will reverse the trial court's judgment, and the matter will be remanded for further proceedings.

Judgment accordingly.

DONOVAN, P.J., concurs.

GRADY, J., dissents.

GRADY, Judge, dissenting.

{¶ 66} The majority's decision sustaining the first assignment of error is based on a misreading of the record and the law applicable to it.

{¶ 67} The trial court did not find that defendant Dennis was a trespasser and therefore lacks standing to prosecute his motion to suppress evidence because he'd been "evicted." Rather, the court found that Dennis was a trespasser because "he had received two eviction notices prior to the (officer's) entry into the apartment."

{¶ 68} The finding the trial court made assumes the application of R.C. 1923.02(B) and 5321.17(B) to the effect that the notices Dennis received had on his tenancy. Those sections provide that such notices terminate an oral, month-to-month tenancy. Dennis's landlord could then elect to treat Dennis as a

trespasser. *Johnson v. Brown,* Clark App. No. 2002–CA–76, 2003-Ohio-1257, 2003 WL 1193795, ¶ 12. It is clear from this record that his landlord did.

{¶ 69} The majority holds that a judgment entered pursuant to R.C. 1923.09(A) was instead necessary in order to terminate Dennis's tenancy. The majority relies on *Steiner v. Minkowski* (1991), 72 Ohio App.3d 754, 596 N.E.2d 492, and *State ex rel. Jenkins v. Hamilton Cty. Court* (1961), 114 Ohio App. 231, 19 O.O.2d 106, 173 N.E.2d 186. Neither case involved an oral tenancy, however.

{¶ 70} The record does not reflect whether Dennis's tenancy was oral or written or indicate its duration. It was Dennis's burden to offer evidence on the terms of his tenancy following the state's objection that he lacks standing. Any abuse of discretion the trial court committed in assuming an oral, month-to-month tenancy is therefore chargeable to Dennis.

{¶ 71} Nevertheless, even on the assumption the court made, Dennis demonstrated that he was entitled to the protections afforded by the Fourth Amendment when officers opened the door to his apartment and entered on August 17, 2007.

{¶ 72} The deadlines the landlord's two notices presented had not yet passed on the date police entered, according to Dennis's uncontradicted testimony, and he was using the time remaining to move out. His landlord therefore "suffered" Dennis's presence on the premises for that limited time and purpose, *Johnson v. Brown,* which by reference to both laws of property and understandings that society recognizes conferred a legitimate expectation of privacy on Dennis. *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387. Dennis therefore had a reasonable expectation of freedom from the governmental intrusion that occurred necessary to confer standing to complain of a Fourth Amendment violation. *Mancusi v. DeForte* (1968), 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154.

{¶ 73} I would sustain the first assignment of error on the foregoing analysis. I do not agree with the majority's view that a judgment authorized by R.C. 1923.09(A) is always necessary on facts of this kind.

{¶ 74} My dissent is from the majority's decision sustaining the second assignment of error, which is not an assignment of error at all but is instead a proposition of law that "[t]he opening of appellant's door and entrance into his apartment violated his Fourth Amendment Constitutional rights."

{¶ 75} Having found that defendant lacks standing, the trial court did not reach the issue of whether the officers violated defendant's Fourth Amendment rights when they opened the door of his apartment. The court instead found that having done that, the officers had probable cause to arrest defendant as a trespasser and to seize the contraband they saw him discard.

{¶ 76} The majority nevertheless sustains the second assignment of error on a finding that defendant's Fourth Amendment rights were violated when officers opened the door to his apartment because it was not reasonable for them to do that. Had the trial court so found, we could review the question de novo. However, not having made any finding in that regard, the trial court committed no error in that regard for us to review. The majority's decision sustaining the second "assignment" is therefore no more than a gratuitous expression of a legal opinion by a court lacking a justiciable controversy to determine. In other words, it is an advisory opinion, offered prospectively and granting no relief.

{¶ 77} An appellate court may affirm an erroneous judgment on other grounds, so long as those grounds were fully adduced in the proceedings before the trial court. *State v. Peagler* (1996), 76 Ohio St.3d 496, 668 N.E.2d 489. There is no corollary to that rule that permits an appellate court to reverse a judgment on grounds that were fully adduced but on which the trial court rendered no judgment. The trial court did not decide whether opening defendant's door violated his Fourth Amendment rights. I would remand the case to the trial court to rule on that issue.