[Cite as *State v. Curbow*, 2013-Ohio-3378.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY   COUNTY

| | |
|---|---|
| STATE OF OHIO | : |
| | :    Appellate Case No. 25516 |
|      Plaintiff-Appellee | : |
| | :    Trial Court Case No. 12-CR-444/1 |
| v. | : |
| | : |
| JERRY W. CURBOW, II | : |
| | :    (Criminal Appeal from |
|      Defendant-Appellant | :    Common Pleas Court) |
| | : |

. . . . . . . . . . .

### O P I N I O N

Rendered on the 2nd day of August, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

WILLIAM T. DALY, Atty. Reg. #0069300, 70 Birch Alley, Suite 240, Dayton, Ohio 45440
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.,

{¶ 1} Jerry Curbow appeals from his conviction and sentence following a no-contest plea to one count of aggravated drug possession (methamphetamine) in violation of R.C. 2925.11(A), a second-degree felony.

{¶ 2} Curbow's appointed appellate counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting the absence of any

non-frivolous issues for our review. Counsel did identify one potential assignment of error concerning the trial court's denial of a suppression motion. Counsel determined, however, that a challenge to the ruling would be frivolous. Counsel also found no non-frivolous appellate arguments with regard to Curbow's plea or the sentence he received. By entry, we informed Curbow of the *Anders* brief and gave him sixty days to file a pro se brief. He failed to do so.

{¶ 3} The record reflects that Curbow entered his plea as part of a negotiated agreement. Curbow and the State reached the agreement after the trial court overruled a motion to suppress drug evidence, which was found during a search of his girlfriend's residence. In exchange for the plea, the State agreed to dismiss two other charges, illegal manufacture of methamphetamine and possession of chemicals for the manufacture of methamphetamine. Curbow and the State also agreed to a three-year prison sentence. The trial court accepted the plea and made a finding of guilt. The matter proceeded to sentencing, where the trial court imposed the agreed sentence. This appeal followed.

FACTS

{¶ 4} Evidence presented during a September 6, 2012 suppression hearing established that Michael Walker was a detective with the Kettering police department on November 25, 2011. He was assigned to an alleged sexual assault involving victim Molly Hammonds, who was Curbow's co-defendant in the proceedings below. She was being transported to Kettering Medical Center ("KMC"). Walker was familiar with Hammonds from a burglary complaint at her home earlier in the summer. He did not believe she was exhibiting overt signs of being under the influence of drugs or alcohol. Hammonds told Walker she believed she had been drugged and sexually assaulted by Curbow, her boyfriend, who was an overnight guest at her house. Walker

told Hammonds he wanted to collect items from her home, including bedding and a Circle-K cup that she thought might contain a drugged beverage. Hammonds gave oral consent to search her home and signed a consent-to-search form. She was cooperative, and Walker made no threats or promises.

{¶ 5} Walker proceeded to Hammonds' house with other officers. Curbow was still there. Walker informed him they were there with Hammonds' consent to search the home. Walker asked Curbow if he would go to the police station to talk about Hammonds' allegations. He agreed. Walker then was informed that other officers had discovered chemicals and possible methamphetamine in a "little attic crawl space" in the master attic/bedroom. Walker returned to the home to meet with an agent from the Ohio Bureau of Criminal Investigation ("BCI") who had been called to the scene. When Walker returned to the hospital to follow up with Hammonds, she asked if they had found the meth lab.

{¶ 6} For her part, Hammonds testified that she called 911 after sitting on her couch and thinking that she had been drugged and that she was dying. She was taken to KMC, where she was put in a locked psychiatric unit. She denied knowing what the detective told her at the hospital. She agreed, however, that she did report a sexual assault. She denied that the detective asked her about any prescription medications she was taking. She testified that she was taking medication for anxiety, major depression, and weight loss.

{¶ 7} Although Hammonds was uncertain when she left KMC, she recalled walking a few miles home and going to sleep. The next day, she went to Miami Valley Hospital and stayed for three days for major-depression disorder. She testified that she did not remember detective Walker showing her the consent-to-search form. She acknowledged her signature on the form but

did not remember signing it. She denied detectives telling her they wanted to search her home. At some points in her testimony, she said she did not recall. Other times, she denied parts of Walker's testimony. At one point, Hammonds was asked, "Did you not want them to go search your home?" She responded, "I didn't have a -- I didn't know – I don't know." After Walker returned to the hospital, she denied asking him whether they had found the meth lab.

**{¶ 8}** In its ruling, the trial court found Walker's testimony more credible than Hammonds' testimony. It reasoned:

> * * * Walker credibly testified that Hammonds was upset but coherent and cooperative when she verbally consented to the search of her residence. He further testified that he thoroughly explained the consent to search form that she signed. Walker stated that she understood the form and was not coerced into signing it. Upon reviewing the testimony presented, the Court finds Walker's testimony to be more credible than Hammonds['].

(Doc. #40 at 3).[1]

## ANALYSIS

**{¶ 9}** We agree with appointed appellate counsel's assessment that a challenge to the trial court's suppression ruling would be frivolous. One established exception to the search-warrant requirement is a search conducted with consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Dennis*, 182 Ohio App.3d 674, 2009-Ohio-2173, 914 N.E.2d 1071, ¶ 50 (2d Dist.). The State must establish, by clear and

---

[1] The trial court also determined that Curbow was not a resident of Hammonds' home and lacked standing to challenge the search. We cannot locate where that issue was raised, either before or during the suppression hearing. For purposes of our analysis under *Anders*, we will assume Curbow can challenge the search.

convincing evidence, that consent to a search was given freely and voluntarily. *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988); *State v. Connors-Camp*, 2d Dist. Montgomery No. 20850, 2006-Ohio-409, ¶ 29. Permission to search need not come from a defendant. It may be obtained from a third party with common authority over the premises to be inspected. *U.S. v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1973).

{¶ 10}   When resolving a suppression motion, a trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." (Citation omitted.) *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). "Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard."   *Id.*

{¶ 11}   In the present case, we carefully have reviewed the suppression-hearing transcript and the trial court's decision. The only reasonable conclusion is that the trial court's decision is factually and legally correct. Hammonds voluntarily consented to a search of her home. Any argument to the contrary lacks arguable merit and would be frivolous.  Finally, we have performed our duty under *Anders* to conduct an independent review of the record and have found no potential assignments of error with arguable merit. Accordingly, the trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
William T. Daly
Hon. Barbara P. Gorman