The STATE of Ohio, Appellee,

v.

DUBOSE, Appellant.

[Cite as *State v. Dubose,* 164 Ohio App.3d 698, 2005-Ohio-6602.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 04 MA 219.

Decided Dec. 6, 2005.

700

Paul J. Gains, Mahoning County Prosecuting Attorney, for appellee.

Engler & Associates, L.L.C., and David L. Engler, for appellant.

WAITE, Judge.

{¶ 1} Appellant, Manuel Dubose, was convicted in the Mahoning County Court of Common Pleas on one count of possession of heroin. Prior to his arrest on this charge, he had been stopped by police for driving with a cracked windshield. During the stop, his girlfriend arrived at the scene, spoke with appellant, and was seen receiving from appellant a can that was sandwiched between some papers. The can was immediately confiscated and examined by the police, who discovered that it had a false bottom and actually contained heroin. Appellant filed a motion to suppress the evidence due to an illegal search and seizure, but the motion was overruled. Appellee has not filed a brief on appeal, and appellant's unrebutted arguments support the conclusion that the warrantless seizure and opening of the can were unreasonable under the Fourth Amendment. The judgment of the trial court is reversed.

{¶ 2} On December 12, 2002, appellant was driving on the north side of Youngstown when he was stopped by Officers Matthew Willis and Joseph Moran of the Youngstown Police Department. Officer Willis recognized appellant, and called him by his nickname, "Rocket." The officer asked for appellant's license, registration, and insurance card. Appellant did not have his insurance card, and he asked if he could make a phone call to his girlfriend to bring the insurance information. The officers allowed him to make the call. They returned to their police cruiser and began making out a citation for an unsafe vehicle due to a cracked windshield. Officer Willis testified that the sole reason for the traffic stop was the cracked windshield.

{¶ 3} At this point, appellant's girlfriend, Cina Ewing, arrived at the scene. She got out of her vehicle and attempted to hand appellant a stack of papers. The officers got out of the cruiser and told her not to approach appellant but to bring the papers to them. She complied, but there was no proper insurance information in the stack of papers. She returned to her car, took out more papers, and approached appellant's car again.

{¶ 4} According to appellant's presentation of the facts, Officer Moran approached Ewing and asked what she was handing to appellant. Officer Willis then approached appellant and told him to get out of the vehicle. Officer Moran opened the passenger door of appellant's car and began searching through the front seat. He found a red-and-white can of Scotchgard. He shook the can, unscrewed the bottom, and pulled out a plastic bag that was later identified as containing heroin. The officers immediately pulled out their service weapons and told appellant to get out of the car. They subsequently arrested him for possession of heroin.

{¶ 5} Appellant's version of the facts relating to the seizure of the can contrasts with the officers' testimony. Officer Willis testified that appellant handed a red-and-white can to Ewing. Officer Moran testified that the third time Ewing approached the vehicle, appellant handed some papers to her, with a can sandwiched between the papers. Officer Moran then approached Ewing and said, "Let me see that can." It appeared to be a can of Scotchgard. He took the can from her, shook it, and determined that something other than liquid was rattling in the can. He examined the can, unscrewed the bottom, and found a plastic bag with heroin inside. At this point appellant attempted to start the car, and Officer Moran drew his service weapon. When Ewing began raising her voice, Officer Willis came over to assist and prevent appellant from driving away. Appellant was then arrested for possession of heroin.

{¶ 6} Appellant was indicted on December 19, 2002, on one count of drug abuse in violation of R.C. 2925.11(A) and (C)(6)(e), which was a first-degree felony based on the amount of heroin confiscated from appellant.

{¶ 7} On June 10, 2003, appellant filed a motion to suppress evidence. A hearing on the motion took place on August 30, 2003. The court overruled the motion on October 8, 2003. The judge stated that he accepted the officer's testimony that appellant actually handed the Scotchgard can to Ewing and that the officers took the can from her outside the car. The judge reasoned that appellant had no privacy interest in the can after giving it to Ewing and that there was therefore no violation of appellant's right against unreasonable searches and seizures.

{¶ 8} On January 20, 2004, appellant filed a motion for reconsideration of the October 8, 2003 judgment. Appellant's primary reason was to cite R.C. 2935.26(A), which contains a very narrow list of reasons why a person may be arrested for a minor misdemeanor charge. Appellant argued that none of the R.C. 2935.26(A) exceptions applied in this case, that he could not have been arrested for the broken windshield, and that his car could not have been properly searched as an incident of arrest. On March 26, 2004, the court overruled the motion for reconsideration. The court reasoned that appellant was not under arrest when they confiscated the can and that appellant had no protectable privacy interest in the can once he handed it to Ewing.

{¶ 9} On May 25, 2004, appellant pleaded no contest to the charge. Appellant filed a notice of appeal on June 25, 2004, prior to being sentenced. This was designated as Appeal No. 04 MA 143. The overruling of a motion to suppress is an interlocutory order until the judgment of conviction and the judgment of sentence are filed. *State v. McGhee*, 7th Dist. No. 04 JE 11, 2005-Ohio-1334, 2005 WL 678748; *State v. Lebron* (Nov. 22, 1999), 7th Dist. No. 99CA35, 1999 WL 1124762. Thus, this appeal was filed prematurely.

{¶ 10} On September 2, 2004, appellant was sentenced to a three-year prison term and a six-month license suspension. On September 22, 2004, appellant filed another notice of appeal. This was designated as appeal No. 04 MA 219. The prior premature appeal was later dismissed, and the filings were transferred to appeal No. 04 MA 219.

{¶ 11} Appellee has not filed a brief in this appeal, and this court may accept appellant's presentation of the facts and issues and reverse the judgment, if it appears reasonable to do so. App.R. 18(C).

### Assignment of Error

{¶ 12} "The trial court erred in admitting evidence gained from an unlawful and warrantless search and seizure in violation of Mr. Dubose's constitutional rights."

{¶ 13} Appellant asserts correctly that the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit the police from conducting unreasonable and warrantless searches and seizures. The Fourth Amendment states:

{¶ 14} "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶ 15} Section 14, Article I of the Ohio Constitution is almost identical and states:

{¶ 16} "The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized."

{¶ 17} Evidence that is obtained in violation of these constitutional provisions will generally be prohibited from trial under the exclusionary rule. "Although the Fourth Amendment does not explicitly provide that violations of its provisions will result in suppression of evidence obtained as a result of the violation, the United States Supreme Court has held that the exclusion of that evidence is an essential part of the Fourth Amendment." *State v. Jones* (2000), 88 Ohio St.3d 430, 434, 727 N.E.2d 886.

{¶ 18} The initial burden of demonstrating a warrantless search is on the defendant, but "[o]nce a warrantless search is established, the burden of persuasion is on the state to show the validity of the search." *Xenia v. Wallace* (1988),

37 Ohio St.3d 216, 218, 524 N.E.2d 889. The state must show either that there actually was a warrant or that there was some other justification for the search or seizure. *State v. Rodriquez* (1990), 66 Ohio App.3d 5, 12, 583 N.E.2d 384.

{¶ 19} There is no question that a warrantless search took place in this case. At the start of the suppressing hearing on August 21, 2003, the prosecutor stipulated that "this was a warrantless search."

{¶ 20} Appellant contends that there was no justification for the seizure of the Scotchgard can and no justification for further searching the can after it was seized. In appellant's motion to suppress, he speculated that the state might attempt to justify the search and seizure as part of a search incident to a valid arrest. Appellant contends that he was stopped for a minor traffic offense. He asserts that R.C. 2935.26(A) prohibits the police from arresting a person for a minor misdemeanor offense unless certain factors are met and that none of the those factors apply in this case. Before proceeding with appellant's argument, it must be noted that nowhere in the record is any theory presented by the state that explains or justifies the warrantless search. The state did not file any legal memorandum in response to appellant's motion to suppress and did not respond to this appeal. Furthermore, there is nothing in the transcript of the suppression hearing that sets forth any legal theory justifying the search and seizure. The state simply presented the testimony of the arresting officers and rested its case. The trial court was left to speculate as to any possible theories the state might have been considering. Given that the record does not reflect any attempt by appellee, whether at trial or on appeal, to explain how the warrantless search and seizure of evidence could be justified, it would be appropriate to sustain appellant's assignment of error. Nevertheless, we will examine the remainder of appellant's argument to address the basis that the trial court itself used to justify the warrantless search and to overrule appellant's motion to suppress.

{¶ 21} Appellant continues his argument by acknowledging that the police may conduct warrantless searches to some extent as an incident to a proper arrest. See, e.g., *Weeks v. United States* (1914), 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. Appellant is correct that the Fourth Amendment is not violated by a valid search incident to an arrest in order for the police to seize weapons or preserve evidence. *Chimel v. California* (1969), 395 U.S. 752, 762–763, 89 S.Ct. 2034, 23 L.Ed.2d 685. The police may also validly search the passenger area of an automobile, including any containers therein, incidentally to an arrest for a misdemeanor traffic violation. *New York v. Belton* (1981), 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768; *State v. Murrell* (2002), 94 Ohio St.3d 489, 764 N.E.2d 986, at syllabus. The actual arrest need not precede the search, as long as the fruits of the search are not used to support probable cause for the

arrest. *Rawlings v. Kentucky* (1980), 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633.

{¶ 22} In the case of minor-misdemeanor stops, though, R.C. 2935.26(A) prohibits an arrest for a minor misdemeanor unless one of four exceptions is met:

{¶ 23} "(A) Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the following applies:

{¶ 24} "(1) The offender requires medical care or is unable to provide for his own safety.

{¶ 25} "(2) The offender cannot or will not offer satisfactory evidence of his identity.

{¶ 26} "(3) The offender refuses to sign the citation.

{¶ 27} "(4) The offender has previously been issued a citation for the commission of that misdemeanor and has failed to do one of the following:

{¶ 28} "(a) Appear at the time and place stated in the citation;

{¶ 29} "(b) Comply with division (C) of this section."

{¶ 30} There is no question that the original traffic stop in this case was for the minor-misdemeanor violation of driving an unsafe vehicle. Appellant is correct that he could not be properly arrested for the minor-misdemeanor traffic violation unless one of the four exceptions listed in R.C. 2935.26(A) applied. He argues that none of those exceptions applied prior to the seizure and search of the Scotchgard can and that the state did not attempt to prove that any of those exceptions applied. He concludes that the police could not have conducted a valid search as an incident to an arrest when the police could not have properly arrested him in the first place, based on the restrictions contained in R.C. 2935.26(A).

{¶ 31} Appellant's argument relies heavily on the analysis found in *State v. Brown,* 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175. In *Brown,* the defendant was waving his arms, whistling, and yelling in the middle of a road where illegal drugs deals were common. The police arrested the defendant for jaywalking and then searched him, which resulted in the discovery of crack cocaine, after which he was arrested on drug charges. The Ohio Supreme Court determined that the search was illegal because it was not a valid search incident to an arrest.

{¶ 32} According to *Brown,* though, there can be no valid search incident to an arrest for a minor misdemeanor unless a person may legitimately be arrested in the first place, and such an arrest would be valid only if one of the four scenarios

set forth in R.C. 2935.26(A) has been satisfied. Id. at ¶ 16. *Brown* recognized that, under a recent ruling of the United States Supreme Court, the federal Constitution is not necessarily violated when police arrest a person for committing a minor misdemeanor. See *Atwater v. Lago Vista* (2001), 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549. The *Brown* court, though, held that Ohio provides greater protection in this area than the search-and-seizure provisions of the United States Constitution. Id. at ¶ 22.

{¶ 33} Thus, the protection offered by R.C. 2935.26(A) subsumes the protections against unreasonable searches and seizures provided in the Fourth Amendment and adds a further layer of statutory protection that is above and beyond the rights contained in the Fourth Amendment.

{¶ 34} It is clear in this case that the police had no justification for arresting appellant for the minor-misdemeanor traffic violation of having a cracked windshield. At no time has the state attempted to demonstrate that one of the exceptions listed in R.C. 2935.26(A) applies to the facts surrounding appellant's arrest. Obviously, the state could not circularly justify the search by using the fruits of the search as proof that a crime had been committed. In other words, the fact that the officers found heroin cannot be used to justify the search of the Scotchgard can that contained the heroin. Unless there is some reason completely independent from R.C. 2935.26(A) that might explain the warrantless search, the evidence should have been suppressed.

{¶ 35} The trial court justified the search on the independent ground that appellant did not have any privacy interest in the Scotchgard can once he handed it to Ewing and that appellant had no basis to challenge the seizure in the first place. It is a basic principle of constitutional law that a person may not complain of the violation of another person's constitutional rights: "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States* (1969), 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176. In order to challenge a seizure of evidence under the Fourth Amendment, the defendant must be able to show that his or her own legitimate expectations of privacy have been violated in relation to the place searched or the thing seized. *Rakas v. Illinois* (1978), 439 U.S. 128, 134, 99 S.Ct. 421, 58 L.Ed.2d 387.

{¶ 36} Beginning with the case of *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, the primary focus in reviewing unconstitutional searches turned on whether the defendant had an expectation of privacy in the place searched or the thing seized. As *Katz* stated:

{¶ 37} "[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a

subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (Citation omitted.) Id. at 351, 88 S.Ct. 507, 19 L.Ed.2d 576.

{¶ 38} A person's legitimate expectation of privacy is judged by the common expectations of the general public: "Because respondent's expectation of privacy * * * was rooted in 'understandings that are recognized and permitted by society,' *Rakas,* supra, [439 U.S.] at 144 [99 S.Ct. 421, 58 L.Ed.2d 387], fn. 12, it was legitimate, and respondent can claim the protection of the Fourth Amendment." *Minnesota v. Olson* (1990), 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85. An expectation of privacy is legitimate if it is "one that society is prepared to recognize as 'reasonable.'" Id. at 95–96, 110 S.Ct. 1684, 109 L.Ed.2d 85.

{¶ 39} A corollary to this idea of a legitimate expectation of privacy, as explained in *Alderman* and *Rakas,* supra, is that a person must also have some legitimate personal interest in the place searched or thing seized in order to assert that his or her Fourth Amendment privacy rights were violated. Although this is often referred to as the requirement that the person have "standing" to raise the constitutional violation, there is no additional legal analysis that is applied to determine the person's standing. The only question to be answered is whether the person had a legitimate expectation of privacy in the place searched or item seized. If a person has no possessory or property interest in the place searched or item seized, it is often difficult to establish that a legitimate expectation of privacy has been violated. In these situations it is sometimes said that the person has no standing to raise the constitutional violation.

{¶ 40} Although these are fairly simple concepts to express, it is often remarkably difficult in practice to determine a person's legitimate expectations of privacy under the Fourth Amendment: "The Fourth Amendment search and seizure cases present difficult challenges on appellate review. Each case is factually unique and there exist no bright-line tests." *In re Agosto* (1993), 85 Ohio App.3d 188, 193, 619 N.E.2d 475.

{¶ 41} Appellant contends that the police seized the Scotchgard can from his vehicle and that any review should begin with that premise. We do not find this aspect of appellant's presentation of the facts reasonable in light of the record, and we will proceed with our analysis based on the trial court's conclusion that the police did not search the car and that appellant voluntarily handed the can to Ewing.

{¶ 42} There is a very long line of caselaw establishing the principle that police may freely seize and search abandoned items, such as items thrown from vehicles during a police chase, items placed in trash containers, or items dropped by a

pedestrian while fleeing from the police. See, e.g., *Abel v. United States* (1960), 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668; *State v. Freeman* (1980), 64 Ohio St.2d 291, 296, 18 O.O.3d 472, 414 N.E.2d 1044; *United States v. Flynn* (C.A.10, 2002), 309 F.3d 736; *United States v. Mustone* (C.A.1, 1972), 469 F.2d 970; *State v. Hill* (1998), 127 Ohio App.3d 265, 269, 712 N.E.2d 791. Since the Fourth Amendment protects only those places and items that a person expects to remain private, and since abandoned items are available for anyone to find and peruse, courts have consistently denied Fourth Amendment protection over abandoned items. *Bond v. United States* (C.A.7, 1996), 77 F.3d 1009, 1013.

{¶ 43} We are not referring to abandonment in terms of property law, which may be defined as " 'relinquishing of all title, possession, or claim; a virtual intentional throwing away of property.' " *First Fed. S. & L. Assn. of Warren v. A & M Towing & Road Serv., Inc.* (1998), 127 Ohio App.3d 46, 52, 711 N.E.2d 755, quoting Black's Law Dictionary (6th Ed.1990) 3. In the context of search-and-seizure law, abandonment refers to a manifestation or appearance that the person has no interest in the property, rather than a full divestment of legal interest in the property. To demonstrate abandonment in the context of search and seizure, "the government must establish by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized." *United States v. Basinski* (C.A.7, 2000), 226 F.3d 829, 836. Abandonment, in this context, is primarily an issue of the defendant's manifested intent, and this intent may be inferred from all the relevant facts and circumstances surrounding the seizure of the item. *Freeman*, supra, 64 Ohio St.2d at 297, 18 O.O.3d 472, 414 N.E.2d 1044.

{¶ 44} The facts of this case do not fit into any of the standard examples of Fourth Amendment abandonment. Appellant did not deny ownership of the Scotchguard can, or throw it from his vehicle, or deposit it into a trash container, or drop it on the sidewalk and kick it out of view. Appellant handed the can to his girlfriend, who had come to the scene of the traffic stop to assist appellant. Ewing was not a stranger who had merely wandered by. The police were well aware of Ewing's relationship to appellant and had expressly permitted appellant to call her and invite her to the scene.

{¶ 45} Many cases have held that a defendant does not forfeit his or her legitimate expectation of privacy in property when that property is entrusted to a close friend. See, e.g., *Basinski*, 226 F.3d 829 (defendant's briefcase was not abandoned after he entrusted it to a friend for safekeeping); *State v. Dugas* (2001), 109 Wash.App. 592, 36 P.3d 577 (defendant did not abandon his jacket after leaving it on the hood of his car under the assumption that his girlfriend would later pick up the car and the jacket); *Hardy v. Commonwealth* (1994), 17

Va.App. 677, 440 S.E.2d 434 (defendant retained a legitimate expectation of privacy in his automobile by giving the keys to his girlfriend).

{¶ 46} Although these cases have clear similarities to the facts of the instant appeal, we are mindful that each search-and-seizure case is decided on its own particular facts and circumstances. We must point out again, though, that our analysis is hampered by the lack of any response from the state in this appeal, or even in the trial court proceedings, that might provide a legal theory to distinguish the facts of the instant case from the cases cited above. Given that appellee has not responded to this appeal and given the burden placed on the state to establish that there is some justification for the warrantless search and seizure, it appears reasonable to conclude that appellant did retain a legitimate expectation of privacy in the can that he handed to his girlfriend and that appellant is permitted to assert his personal Fourth Amendment rights on appeal. Once we determine that appellant did not abandon the Scotchgard can, we must apply our earlier conclusion that the search and seizure could not be justified under R.C. 2935.26(A) and that the evidence should have been suppressed. We therefore sustain appellant's assignment of error. We reverse appellant's conviction and sentence and reverse the trial court judgment that overruled appellant's motion to suppress evidence. Appellant's motion to suppress is hereby sustained, and this case is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

DONOFRIO, P.J., and VUKOVICH, J., concur.