[Cite as *State v. Dailey*, 2010-Ohio-4816.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
LOGAN COUNTY

STATE OF OHIO,                                             CASE NO. 8-10-01

   PLAINTIFF-APPELLEE,

 v.

WILLIAM R. DAILEY,                                      O P I N I O N

   DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 09-03-0043

Judgment Affirmed

Date of Decision:  October 4, 2010

APPEARANCES:

   *Marc S. Triplett,* for Appellant

   *Daniel J. LaRoche,* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, William R. Dailey (hereinafter "Dailey"), appeals the Logan County Court of Common Pleas' judgment dismissing his motion to suppress and its judgment entry of sentence. For the reasons that follow, we affirm.

{¶2} This case stems from the events that took place on January 10, 2009, in Bellefontaine, Ohio. On that particular day, Brad Stafford (hereinafter "Stafford") was working at the Wal-Mart store in Bellefontaine, Ohio, in the asset protection department. (June 17, 2009 Tr. at 28). One of Stafford's duties was to deter theft by walking through the store dressed in an inconspicuous manner, observe customers, and, if necessary, apprehend shoplifters. (Id. at 30). Around 5:30 p.m. that day, Stafford observed Dailey in the store's electronics department, located at the back of the store, walk up to a display of DVDs, pick up several DVDs, and then start walking towards the front of the store. (Id. at 29-31, 52). Stafford followed Dailey, who was still holding the stack of DVDs, until he briefly lost sight of him for a few moments; however, when Dailey re-emerged, he was no longer holding the DVDs. (Id.). Then Stafford observed Dailey take a computer off a nearby shelf, place it in his shopping cart, and head to the exit of the store at an accelerated pace. (Id.). As a result, Stafford started chasing after Dailey. (Id.). An employee at the front of the store yelled at Dailey in an attempt to stop him,

and Stafford eventually reached Dailey at the store's sliding doors. (Id. at 33). At that point, Dailey turned around and attempted to elbow Stafford, and a physical altercation ensued between the two individuals, at which point Dailey ended up grabbing Stafford's neck. (Id.). Eventually, Stafford grabbed Dailey's jacket in an attempt to detain him, but after swaying back and forth and turning around several times, Dailey managed to turn the jacket inside out and slip out of its arms, and took off running. (August 7, 2009 at 5-7).

{¶3} After Dailey left the scene, Stafford went back inside with the coat and set off the store's anti-theft device at the store's entrance. (Id. at 8). Stafford looked through the coat and discovered several DVDs and a cell phone. (Id.).

{¶4} Officer Jason Lapp of the Bellefontaine Police Department responded to the incident. (August 7, 2009 Tr. at 15). He talked to Stafford about what had happened and was given the jacket and the cell phone. (Id.). Officer Lapp tried to turn on the cell phone, but it died immediately, so Stafford provided him a charger from the store. (Id. at 15-16). After re-charging the cell phone, Officer Lapp was able to locate the contact information stored in the cell phone's directory and made a call to one of the contacts. (Id. at 15-16). Officer Lapp spoke to a woman, and through the course of their conversation, was able to obtain enough information regarding the identification of the cell phone's owner. (Id. at 17). Officer Lapp used this information to obtain a photograph of Dailey, which

was shown to Stafford, who identified him as the person who had taken the DVDs and assaulted him. (Id. at 14).

{¶5} On March 10, 2009, the Logan County Grand Jury indicted Dailey on one count of robbery in violation of R.C. 2911.02(A)(2), a felony of the second degree, and one count theft in violation of R.C. 2913.02(A)(1), a felony of the fifth degree. Dailey appeared before the Logan County Court of Common Pleas for arraignment on March 13, 2009, and the trial court granted a recognizance bond to him. Counsel was appointed and the matter was continued to March 16, 2009, at which time Dailey appeared and entered pleas of not guilty to each count of the indictment.

{¶6} On June 17, 2009, the trial court held an evidentiary hearing on Dailey's motion to suppress the identification testimony of Mr. Stafford. The parties did not dispute that Officer Lapp had shown Mr. Stafford a single photograph which contained Dailey's picture. Ultimately, the trial court overruled the motion.

{¶7} On August 7, 2009, the trial court conducted another evidentiary hearing on Dailey's second motion to suppress the data contained in his cell phone that he argued had been obtained by an improper warrantless search. The trial court overruled his second motion to suppress.

{¶8} On September 30, 2009, Dailey entered into a plea agreement with the State, whereby he entered a no contest plea to an amended charge of robbery

(reduced to a felony of the third degree), while State dismissed the theft count. After entering a no contest plea, the trial court found him guilty, revoked his recognizance bond, and set the matter for sentencing. On November 2, 2009, a sentencing hearing was held and the trial court imposed a two-year prison sentence, which was to run concurrently to a prison sentence Dailey was then serving on a community control violation imposed by the Marion County Court of Common Pleas. The trial court also denied Dailey's motion to grant him jail-time credit for the entire time he had been in custody since his January 10, 2009 arrest; however, the trial court did grant him jail-time credit for the time he had been incarcerated since entering his no contest plea and having his recognizance bond revoked.

{¶9} The trial court filed its judgment entry of sentence on November 10, 2009, but because of an error, the trial court issues its Nunc Pro Tunc judgment entry of sentence on December 22, 2009.

{¶10} Dailey now appeals and raises two assignments of error.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS THE WARRANTLESS SEARCH OF THE DATA IN HIS CELL PHONE.**

{¶11} In his first assignment of error, Dailey argues that the trial court erred when it denied his motion to suppress the warrantless search of the data in

his cell phone. The State responds by arguing that Dailey lacks standing to object to the search of his cell phone since he voluntarily abandoned it at the scene.

**{¶12}** A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. See *State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965. When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside*, 2003-Ohio-5372, at ¶8. With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539.

**{¶13}** In this particular case, the trial court overruled Dailey's motion to suppress and found that "[t]he Defendant's constitutional rights were not violated by the police in using the information in the cell phone to identify the Defendant since the Defendant abandoned the cell phone." (Aug. 13, 2009 JE at 3). After reviewing the record and the applicable law, we agree with the trial court's decision.

**{¶14}** The Fourth and Fourteenth Amendments to the United States Constitution generally prohibit warrantless searches and seizures, and any

evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant. *Mapp v. Ohio* (1961), 367 U.S. 643, 649, 81 S.Ct. 1684, 6 L.Ed.2d 1081. At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, and that it meets Fourth Amendment standards of reasonableness. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, at paragraph two of the syllabus; *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 373 N.E.2d 1252; *City of Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 297, 729 N.E.2d 507, citing 5 LaFave, Search and Seizure (3 Ed.1996), Section 11.2(b).

{¶15} Nevertheless, "[i]t has long been settled that '[a] defendant has no standing under the Fourth Amendment to the United States Constitution to object to a search and seizure of property that he has voluntarily abandoned'." *State v. Russell*, 2nd Dist. No. 21458, 2007-Ohio-137, ¶21, quoting *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph two of the syllabus. The Ohio Supreme Court has further explained:

> **'Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so**

> **that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.'**

*Freeman*, 64 Ohio St.2d at 296, quoting *United States v. Colbert* (C.A.5, 1973), 474 F.2d 174, 176, internal citations omitted. The State also bears the burden of establishing, by a preponderance of the evidence, that the defendant abandoned the property at issue. *State v. Dennis*, 182 Ohio App.3d 674, 2009-Ohio-2173, 914 N.E.2d 1071, ¶41, citing *State v. Dubose*, 164 Ohio App.3d 698, 2005-Ohio-6602, 843 N.E.2d 1222, ¶43.

{¶16} In this particular case, we believe that it was clear that Dailey voluntarily abandoned his cell phone when he slipped out of his coat and left it and its contents behind in order to escape being detained by a Wal-Mart store employee. When Stafford reached Dailey at the Wal-Mart sliding doors, Dailey turned around and tried to elbow him in the face. A physical altercation ensued between the two, which eventually spilled into the store's parking lot. At one point, Stafford grabbed Dailey's jacket, but Dailey managed to maneuver his way out of the jacket and quickly ran off, leaving his jacket in Stafford's possession. At no time thereafter did Dailey request his jacket or any of its contents be returned to him.

{¶17} Dailey claims that he did not voluntarily abandon his cell phone because his relinquishment of his coat was the result of the restraints placed upon him by Stafford. We disagree and fail to see how being restrained by Stafford

rendered his decision to leave his jacket and its contents behind involuntary. In fact, it seems rather clear that in an attempt to escape being detained by the store employee, Dailey deliberately chose to leave his jacket and its contents behind. As a result, we find that he no longer retained a reasonable expectation of privacy with regards to the cell phone, and that the subsequent search of the data in his cell phone was reasonable.

{¶18} Nevertheless, Dailey argues that the warrantless search of his phone was in violation of his constitutional rights. In support of his argument, Dailey cites to *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, in which the Supreme Court considered whether a warrantless search of a cell phone's data subsequent to a search incident to arrest was a violation of a defendant's Fourth Amendment right against unreasonable searches and seizures. For purposes of a Fourth Amendment analysis, the Supreme Court specifically rejected the idea that cell phones are similar to closed containers, and recognized that an individual has more of a privacy interest in the contents of a cell phone than an individual would have in an address book or pager. *Smith*, 2009-Ohio-6426, at ¶¶20-24. Ultimately, the Court held that, "[t]he warrantless search of data within a cell phone seized incident to a lawful arrest is prohibited by the Fourth Amendment when the search is unnecessary for the safety of law-enforcement officers and there are no exigent circumstances." Id. at syllabus.

{¶19} Dailey claims that since he had not voluntarily abandoned his cell phone, he still had a reasonable expectation of privacy and, as a result of *Smith*, the police had to first obtain a warrant in order to conduct a search of his cell phone. However, even if we were to find that Dailey had not voluntarily abandoned his cell phone, we believe that the facts of the *Smith* case are distinguishable from the present case.

{¶20} First of all, the manner in which law enforcement obtained the cell phones in the two cases differ significantly. In *Smith*, the police had seized the defendant's cell phone as a result of arresting him. Id. at ¶3. Here, Dailey's cell phone was possessed as a result of him leaving his coat behind in an attempt to escape being apprehended by a Wal-Mart employee. Second, the basis for the warrantless search conducted on the defendant's cell phone in *Smith* was completely different than the basis for the warrantless search in this case. In *Smith*, the State argued that the search had been lawful because it had been performed as a search incident to an arrest. Id. at ¶11. Here, the State argued, and the trial court found, that Dailey had no standing to object to a warrantless search of his cell phone because he had left it behind while he was fleeing the scene of the incident.

{¶21} Furthermore, we note that while the Supreme Court pointedly disagreed with the State's position that a warrantless search of a cell phone conducted as a search incident to arrest was permissible under the Fourth

Amendment, its ruling was not so broad as to cover every search conducted on cell phones seized by law enforcement. Rather, it specifically noted that "there may be some instances in which a warrantless search of a cell phone is necessary to identify a suspect." Id. at ¶27. We believe that voluntary abandonment is a prime example of when a warrantless search of a cell phone may be conducted since it is clear that a defendant lacks standing to object to a search and seizure of property that he has voluntarily abandoned. Therefore, we believe that the trial court's decision to overrule Dailey's motion to suppress the warrantless search of the data in his cell phone was reasonable given the facts presented, and, legally correct given the applicable law.

{¶22} Dailey's first assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR ADDITIONAL JAIL TIME CREDIT.**

{¶23} In his second assignment of error, Dailey argues that the trial court erred when it limited Dailey's jail-time credit to only the time between the date of his no contest plea (when the trial court revoked his personal recognizance bond) and the sentencing hearing. In particular, Dailey claims that jail-time credit should have been applied to his Logan County sentence for time he served on his re-incarceration in Marion County for a community control violation when his Logan County sentence was to be served concurrently with his Marion County sentence.

**{¶24}** "The Adult Parole Authority has the duty to grant jail time credit, however, 'the trial court has the duty to properly calculate the number of days to be credited.'" *State v. Pitts*, 3d Dist. No. 1-06-106, 2007-Ohio-5197, ¶15, quoting *State v. Eaton*, 3d Dist. No. 14-04-53, 2005-Ohio-3238, ¶9. See, also, *State v. Fair* (2000), 136 Ohio App.3d 184, 188, 736 N.E.2d 82.

**{¶25}** R.C. 2967.191 governs a defendant's right to jail-time credit, and, in pertinent part, provides:

> **The department of rehabilitation and correction shall reduce the stated prison term of a prisoner or, if the prisoner is serving a term for which there is parole eligibility, the minimum and maximum term or the parole eligibility date of the prisoner by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced * * *.**

Thus, a defendant is only entitled to jail-time credit for confinement that is related to the offense for which he is being sentenced. *State v. Daughenbaugh*, 3d Dist. No. 16-09-05, 2009-Ohio-3823, ¶18, citing *Pitts*, 2007-Ohio-5197, at ¶16; *State v. Brooks*, 9th Dist. No. 05CA008786, 2006-Ohio-1485, ¶6.

**{¶26}** On appeal, Dailey claims that he is entitled to additional jail-time credit for the entire time he had been in custody since his January 10, 2009 arrest. However, as the statute explicitly states, a defendant is only entitled to "the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted or sentenced." Here, Dailey was never confined because of this offense until after he entered his no contest plea.

On March 10, 2009, the Logan County Grand Jury indicted Dailey on one count of robbery in violation of R.C. 2911.02(A)(2), a felony of the second degree, and one count theft in violation of R.C. 2913.02(A)(1), a felony of the fifth degree. Due to Dailey's current re-incarceration in Marion County, he was ordered to be brought before the Logan County court on March 13, 2009, for arraignment. Dailey appeared before the Logan County Court of Common Pleas for arraignment, and the trial court subsequently granted him a recognizance bond. Despite the recognizance bond, Dailey was returned to prison since he was serving time for a community control violation out of Marion County. Nevertheless, with respect to the Logan County case, at that point in the proceedings, Dailey was not yet being "confined for any reason arising out of the offense."

**{¶27}** Moreover, although Daily seems to suggest that his Marion County sentence for his community control violation "arose out of the offense for which he was convicted or sentenced" in Logan County, it is clear that the two offenses are not related under the definition of R.C. 2967.191. *State v. Bainter*, 6th Dist. No. OT-08-002, 2009-Ohio-510, ¶7, quoting *State v. Mitchell*, 6th Dist. Nos. L-05-1122, L-05-1123, 2005-Ohio-6138, ¶8 ("Generally, after an arrest for a community control violation, any days in confinement count only toward the sentence for the offense for which the community control violation was imposed."). However, we acknowledge that Dailey was entitled to some jail-time credit, but it was not until September 30, 2009 when Dailey entered his no contest

- 13 -

plea and the trial court revoked his recognizance bond, consequently confining Dailey on the Logan County offenses. Moreover, at the sentencing hearing, the trial court granted Dailey the appropriate amount of jail-time credit for the time he spent confined from his no contest plea to when his sentence was imposed. Nevertheless, with respect to any additional jail-time credit Dailey may believe he is entitled to receive, because he was not confined any time prior to entering his no contest plea on the Logan County offenses, he was not entitled to any additional jail-time credit.

{¶28} Notwithstanding the above, Dailey claims that he was entitled to jail-time credit for the time he spent in custody on the Marion County community control violation. This is because his sentence in this Logan County case was ordered to be served concurrently with the Marion County sentence, and that his community control violation was based on his conduct in Logan County. In support of his position, Dailey cites to the *State v. Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440. In *Fugate*, the Ohio Supreme Court held that "when a defendant is sentenced to concurrent terms, credit must be applied against all terms, because the sentences are served simultaneously." Id. at ¶22. However, this holding only applies when the defendant is actually entitled to the jail-time credit pursuant to R.C. 2967.191, or, more clearly stated, when the defendant is being held on each charge. *State v. Parsley*, 10th Dist. No. 09AP-612, 2010-Ohio-1689, ¶50, citing *Fugate*, 2008-Ohio-856, at ¶12, 18 ("So long as an offender is

held on a charge while awaiting trial or sentencing, the offender is entitled to jail-time credit[.] * * * Fugate was indeed held in custody on [each charge] and is therefore entitled to jail-time credit against each concurrent prison term."). See, also, *State v. Maynard,* 10th Dist. No. 08AP-43, 2008-Ohio-3829, ¶17 (noting that the parties conceded in *Fugate* that he was held on each charge). Again, Dailey was not held in custody on the Logan County offenses until his recognizance bond was revoked when he entered his no contest plea. Thus, *Fugate* is inapplicable. Since Dailey received jail-time credit equal to the amount of time he spent in custody between entering his no contest plea and the imposition of his sentence, he received all the jail-time credit he was entitled to receive under the statute. Therefore, the trial court did not err in denying his motion for additional jail-time credit.

{¶29} Dailey's second assignment of error is, therefore, overruled.

{¶30} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J., and ROGERS, J., concur.**

**/jnc**

- 15 -