[Cite as *State v. Milan-Wade*, 2013-Ohio-817.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 98347

---

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## DAVARIS R. MILAN-WADE

DEFENDANT-APPELLEE

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-560821

**BEFORE:** Boyle, P.J., Celebrezze, J., and Keough, J.

**RELEASED AND JOURNALIZED:** March 7, 2013

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Oscar E. Albores
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Matthew F. Browarek
Neal R. Nandi
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Plaintiff-appellant, state of Ohio, appeals the trial court's judgment granting defendant-appellee's Davaris Milan-Wade's motion to suppress. It raises two assignments of error for our review:

> [1.] The trial court erred when it granted defendant's motion to suppress when the defendant had no standing due to abandonment of the backpack and thus lacked an expectation of privacy.

> [2.] The trial court erred when it granted defendant's motion to suppress when the plain smell doctrine clearly permitted the officers to search the backpack located.

{¶2} Finding merit to the state's first assignment of error, we reverse and remand.

<u>Procedural History and Factual Background</u>

{¶3} Milan-Wade was indicted in March 2012 on three counts: trafficking in violation of R.C. 2925.03(A)(2), drug possession in violation of R.C. 2925.11(A), and possessing criminal tools in violation of R.C. 2923.24(A). He moved to suppress all evidence against him, claiming that the police officers involved violated his Fourth and Fourteenth Amendment rights. The following facts were presented at the suppression hearing.

{¶4} Lieutenant James Kracker of the Maple Heights Police Department testified that on March 17, 2012, around 10:20 p.m., he received a radio dispatch stating that a male was robbed at a Marathon gas station by a "larger black male" wearing a

bluish-green sweatshirt. Lieutenant Kracker said that he arrived at the gas station within three minutes of the dispatch. As he approached the front door of the gas station, he saw a male inside who matched the description given to police. He said that the male was "a larger black male, wearing a bluish-gray sweatshirt, and his behavior appeared to be odd and different than the other people that were inside the store."

{¶5} Lieutenant Kracker explained that the male suspect, later identified to be Milan-Wade, was near the front door when Lieutenant Kracker walked in the gas station. When Milan-Wade saw Lieutenant Kracker, he made eye contact with Lieutenant Kracker and started to walk to the back of the store, near the beverage coolers. Lieutenant Kracker said "what was really odd was as he's walking he would just keep eye contact with me, looking at me; whereas other people just continued shopping." Lieutenant Kracker said that Milan-Wade did not look at the beverage coolers or food; Milan-Wade just kept looking at Lieutenant Kracker.

{¶6} Lieutenant Kracker called for assistance before he approached Milan-Wade. After other police officers arrived to assist him, he approached Milan-Wade, who had walked back to the front of the store. He stopped Milan-Wade as he had just stepped outside of the store. Lieutenant Kracker asked Milan-Wade if everything was okay. Milan-Wade responded, but Lieutenant Kracker could not hear what he said because his response was muddled. Lieutenant Kracker asked Milan-Wade what he was doing. Milan-Wade said that he was there to buy food.

**{¶7}** Lieutenant Kracker testified that he and other officers patted Milan-Wade down for safety. They did not find a gun or other contraband on him. While other officers continued to obtain identification from Milan-Wade, Lieutenant Kracker and Officer Pagano went back inside the gas station. Lieutenant Kracker said that he wanted to see if there was anyone else in the store who might match the description given to police. They did not see anyone else matching the description of the robber, but they found a pink and black backpack sitting on the floor in the back corner of the store where Milan-Wade had just walked. The backpack was lying on the floor just inside the entrance to a storage area where only store employees could enter. The storage room had a door to it, but it was open. Lieutenant Kracker said that when he was within a foot of the backpack, he smelled raw marijuana. He said the smell was moderately strong.

**{¶8}** Lieutenant Kracker testified that he never saw Milan-Wade with the backpack and it was closed when he found it. Lieutenant Kracker looked inside the backpack. There was "a big, plastic, clear bag of marijuana," a bottle of alcohol, and some "paperwork" at the bottom of the bag with Milan-Wade's name on it. There were also other "various items" in the backpack, including "some plastic sandwich baggies." Lieutenant Kracker said that after he looked inside the backpack, he asked the store employees if they knew whose backpack it was; no one knew whose it was. Milan-Wade also denied that the backpack was his.

{¶9} Lieutenant Kracker testified that police never found any evidence of a robbery, nor were they able to identify the anonymous caller. Police tried to obtain video surveillance from the store, but the system was not working correctly.

{¶10} Officer Brian Kevern testified that when he arrived at the Marathon gas station, Lieutenant Kracker had already detained Milan-Wade. Officer Kevern testified that after Lieutenant Kracker found the backpack, Milan-Wade was arrested, given his *Miranda* rights, and placed in the back of a police car. Milan-Wade told Officer Kevern that he had found the backpack at the intersection where the gas station is located. Milan-Wade said that when he found the backpack, he looked inside and decided to keep it when he saw the marijuana and wine.

{¶11} Officer Kevern agreed on cross-examination that the anonymous caller had told the dispatcher that he was being robbed by five people, one who had a gun (the person with the gun was who the caller described to police as the larger black male wearing a bluish-grey sweatshirt), and four others. Officer Kevern also agreed that he learned that Milan-Wade had ordered food at the gas station and was waiting for it to be ready.

{¶12} Officer Steven Pagano testified that he was one of the first officers to arrive on the scene. He said that he perused the outside of the gas station, but went to the front of it when Lieutenant Kracker radioed for officers to help him. Officer Pagano testified, "I believe we did handcuff him for our safety * * * if I recall correctly," but once they discovered "that he wasn't armed, we released him from the handcuffs." Officer Pagano

further stated that "[w]hen we couldn't ascertain anything further from the original complaint, [Milan-Wade] was told that he was free to go."

{¶13} Officer Pagano testified that he went back in the gas station with Lieutenant Kracker to search the store where Milan-Wade had walked to see if he "stashed" anything in the store. Officer Pagano saw the backpack near the storage room and alerted Lieutenant Kracker. Officer Pagano said that Lieutenant Kracker handled the backpack, and Officer Pagano went to question store employees about the bag; no one knew whose bag it was. Officer Pagano did not smell anything from the bag and was not aware if anyone else smelled something coming from the bag.

{¶14} On cross-examination, Milan-Wade's counsel played the anonymous call that was made to dispatch, as well as a call from the dispatcher back to the Marathon station. The caller stated that he was calling from the Marathon gas station. He then told the dispatcher, "some dude tried to pull a gun on me, I f'in bolted." The caller described the man with the gun as a "big black dude," wearing a green or blue sweatshirt. The caller further stated that the man was with "like four other people." When the dispatcher asked the man to stay on the phone, he said that he had to go because he believed the men were following him. The dispatcher called the Marathon station back and spoke with someone. The store employee stated that it was "quiet" at the gas station and that he was unaware of any robbery.

{¶15} At the close of the evidence, the trial court granted Milan-Wade's motion to suppress without making any findings of fact. The state appealed.

Standard of Review

{¶16} Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. This court accepts the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Accepting these facts as true, this court must independently determine, as a matter of law and without deference to the trial court's conclusion, whether those facts meet the applicable legal standard. *Id.* Because the trial court did not make any findings of fact here, we must review the evidence in the record to determine whether the trial court erred in ruling on the motion to suppress. *State v. Arrington*, 8th Dist. No. 92556, 2009-Ohio-4721, ¶ 29, fn. 1.

## Abandonment

{¶17} In its first assignment of error, the state argues that the trial court erred when it granted Milan-Wade's motion to suppress. The state maintains that Milan-Wade lacked an expectation of privacy because he abandoned the backpack. We agree.

{¶18} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). It has long been settled, however, that "[a] defendant has no standing under the Fourth Amendment to the United States Constitution to object to a search and seizure of property that he has voluntarily abandoned." *State v. Freeman*, 64 Ohio St.2d 291, 414

N.E.2d 1044 (1980), paragraph two of the syllabus. The Ohio Supreme Court explained in *Freeman*:

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

(Citations omitted.) *Freeman* at 297, quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973).

> "When a person disposes of or abandons property in response to illegal police conduct, such as an illegal seizure or search, that person is not precluded from challenging the admissibility of the evidence because his act of abandonment is not voluntary[;] it is a product or fruit of that illegal police conduct."

*State v. Taylor*, 8th Dist. No. 94853, 2011-Ohio-1554, ¶ 30, quoting *State v. Cosby*, 177 Ohio App.3d 670, 678-679, 2008-Ohio-3862, 895 N.E.2d 868 (2d Dist.). "The test for voluntary abandonment involves a determination of whether the abandonment was a product of the illegal stop and seizure of defendant." *Id.*

{¶19} The government bears the burden of establishing, by a preponderance of the evidence, that the defendant abandoned the property at issue. *State v. Dubose*, 164 Ohio App.3d 698, 2005-Ohio-6602, 843 N.E.2d 1222, ¶ 43 (7th Dist.).

{¶20} At the suppression hearing, Milan-Wade argued that the police did not have reasonable suspicion to initially stop him for questioning because the tip came from an anonymous person. If Milan-Wade had abandoned the backpack after an illegal stop by

the police, then this court would have to determine whether the initial stop of him was valid. If, however, Milan-Wade abandoned the backpack before he was illegally detained, then it does not matter that he was illegally detained for purposes of searching the backpack. *See State v. Alexander*, 120 Ohio App.3d 164, 697 N.E.2d 255 (8th Dist.1997); *California v. Hodari*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (the evidence sought to be suppressed was abandoned prior to the time the defendant was seized and therefore, was not the fruit of a seizure and was not subject to exclusion).

{¶21} In this case, the state established that Milan-Wade voluntarily abandoned the backpack before he was detained. It presented evidence that Milan-Wade was near the front of the store when he first saw Lieutenant Kracker arrive. He then walked to the back of the store near the beverage coolers, never taking his eyes off of Lieutenant Kracker. Milan-Wade then returned to the front of the store and proceeded to walk through the front doors. It was at that point that Lieutenant Kracker approached Milan-Wade. This is sufficient to establish, by a preponderance of the evidence, that Milan-Wade voluntarily abandoned the backpack. *See State v. Taylor*, 2d Dist. No. 23507, 2010-Ohio-2926 (defendant abandoned tissue with crack cocaine in it when he threw it to the ground as he was running from police); *compare State v. Belcher*, 2d Dist. No. 24385, 2011-Ohio-5015 (defendant did not abandon backpack when he placed it on the ground and walked over to the police officer after the police officer told him to "step over here").

{¶22} Milan-Wade contends that "[d]ropping an object, without more, is not tantamount to abandoning one's interest therein." Milan-Wade cites to *State v. Bailey*, 77 Ohio App.3d 742, 603 N.E.2d 1041 (1st. Dist.1991), in support of this argument. In *Bailey*, the court found that the defendant did not voluntarily abandon a change purse when he was sitting on a bar stool and a police officer "merely observed" him drop the object. *Id.* at 745. The court explained that "[n]o other testimony or evidence was introduced to indicate that [the defendant] had intentionally discarded or relinquished his interest in the change purse." The defendant in *Bailey* was just sitting on a bar stool when he dropped the object. In contrast, here, Milan-Wade saw police come into the gas station. He then walked to the back of the store, discarded the backpack just inside the storage room of the gas station, where the door was open. He then proceeded to leave the store after he discarded the backpack. Thus, we find Milan-Wade's argument unpersuasive as *Bailey* is distinguishable from the facts in this case.

{¶23} The key here is that Milan-Wade no longer had a reasonable expectation of privacy in a backpack that he abandoned, and therefore, he does not have standing to challenge the warrantless search and seizure. It is irrelevant that the backpack was just inside the open storage room door of the gas station where only employees could go, and not in a public aisle of the store. Milan-Wade did not have some expectation of privacy in the storage room. It would be different if he had placed it in his car, or his home, or even a hotel room where he was staying. It is also irrelevant that it could have been an employee's backpack. Again, the key is that without a reasonable expectation of

privacy, Milan-Wade cannot challenge the police officer's warrantless search of the backpack. If the backpack had in fact been owned by one of the employees of the gas station, then this analysis might be different depending on that factual scenario.

**{¶24}** Accordingly, the state's first assignment of error is sustained.

## Plain Smell Doctrine

**{¶25}** In its second assignment of error, the state argues that the trial court erred in granting Milan-Wade's motion to suppress because the plain smell doctrine permitted the police to search the backpack.

**{¶26}** We need not reach the state's second assignment of error regarding the plain smell doctrine because it is moot. Because Milan-Wade lacks standing to challenge the warrantless search and seizure without an expectation of privacy in the backpack he abandoned, it is irrelevant whether the officers could search the backpack without a warrant upon smelling marijuana. The Fourth Amendment protects persons from unreasonable searches and seizures by the government — but only if that person has a reasonable expectation of privacy in the evidence seized. *See State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 8.

**{¶27}** Judgment reversed; case remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
KATHLEEN ANN KEOUGH, J., CONCUR