[Cite as *State v. Elschlager*, 2017-Ohio-5545.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | Hon. William B. Hoffman, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 16CAA090041 |
| WILLIAM P. ELSCHLAGER | |
| Defendant-Appellee | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court of Common Pleas, Case No. 16CR-I-05-00223

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     June 26, 2017

APPEARANCES:

For Plaintiff-Appellant

OFFICE OF THE DELAWARE
PROSECUTING ATTORNEY
CAROL HAMILTON O'BRIEN

KYLE ROHRER
First Assistant Prosecuting Attorney
Delaware County Prosecutor's Office
140 North Sandusky Street
Delaware, Ohio 43015

For Defendant-Appellee

SAMUEL H. SHAMANSKY
523 South Third Street
Columbus, Ohio 43215

*Hoffman, J.*

**{¶1}** Plaintiff-appellant the state of Ohio appeals the September 22, 2016 Judgment Entry entered by the Delaware County Court of Common Pleas granting Defendant-appellee William P. Elschlager's motion to suppress, in part.[1]

STATEMENT OF THE FACTS AND CASE

**{¶2}** On January 17, 2016, the Washington County Sheriff's Office executed a search warrant at Appellee's residence located at 305 Masonic Park Road, Marietta, Washington County, Ohio in Case No. 16-CR-15.[2] At all times relevant, the Ohio State Highway Patrol employed Appellee as a sergeant. Appellee was previously assigned to the Delaware County post.

**{¶3}** On January 15, 2016, A.B. met with Captain Troy Hawkins of the Washington County Sheriff's Department. A.B. accused Appellee of menacing by stalking, telecommunications harassment, abduction, unlawful restraint, theft, receiving stolen property and breaking and entering. Specifically, A.B. alleged Appellee stole personal effects from her vehicle, including a small silver ring and a bottle of perfume. Captain Hawkins discussed various protection orders with A.B., but indicated a court would not be able to hear the motion for protective order until after the weekend.

---

[1] The state of Ohio does not appeal that portion of the September 22, 2016 Judgment Entry denying Appellee's motion to suppress the Steyr Mannlicher .40 caliber handgun. Rather, the State's appeal is limited to that portion of the Judgment Entry granting the motion to suppress the seizure of the Jennings pistol.

[2] In Washington County Case No. 16-CR-15, a search warrant was issued based upon a complaint to an officer of the Washington County Sheriff's Department alleging Appellee engaged in telecommunications harassment, unlawful restraint, abduction and receiving stolen property of a female acquaintance.

{¶4} Captain Hawkins obtained a search warrant for Appellee's residence on January 17, 2016. The warrant authorized the search of Appellee's residence to recover the ring, perfume and other documents or records, electronic or otherwise, pertaining to Appellee's alleged crimes of menacing by stalking, telecommunications harassment, abduction, unlawful restraint, theft, receiving stolen property and breaking and entering. The State concedes the search warrant did not mention firearms, but did include "any other type of material" in reference to the charges of menacing by stalking and abduction.

{¶5} During the execution of the search warrant, law enforcement officers observed a pile of clothing on a chair inside the residence. In sorting through the clothing, the officers discovered an Ohio State Highway Patrol evidence bag, with attached papers indicating the chain of custody ended in 2009. Inside the evidence bag, the officers located a Steyr Mannlicher pistol.

{¶6} Lieutenant Scott Parks of the Washington County Sheriff's Department testified at the suppression hearing the illegal nature of the Steyr Mannlicher pistol was immediately apparent to law enforcement officers present during the search due to the evidence bag and papers demonstrating chain of custody. Tr. at 20.

{¶7} The officers then entered the attic of the residence. Captain Hawkins testified at the suppression hearing he observed two boxes of ammunition, one opened and one sealed, addressed to the Ohio Highway Patrol Academy. Tr. at 55. In the area near the ammunition, Captain Hawkins observed another open box containing a .380 caliber Jennings pistol. Captain Hawkins testified he found the Jennings pistol in a nondescript cardboard box. Captain Hawkins then laid the pistol "out so the detective conducting the search could see it laying on top." Tr. at 57. The firearm was later

determined to be evidence in a 2004 Delaware County case in which the defendant plead guilty, and the firearm was ordered to be destroyed. The officers seized both the Steyr Mannlicher pistol and the .380 Jennings pistol.

{¶8} On May 6, 2016, the Delaware County Grand Jury indicted Appellee on one count of tampering with records, in violation of R.C. 2913.42(A)(1), a third degree felony; two counts of theft, in violation of R.C. 2913.02(A)(3), felonies of the third degree; two counts of theft, in violation of R.C. 2913.02(A)(1), felonies of the third degree; and two counts of theft, in violation of R.C. 2913.02(A)(2), felonies of the third degree.

{¶9} On August 19, 2016, Appellee filed a motion to suppress evidence obtained pursuant to the search warrant issued in Washington County No. 16-CR-15. On September 1, 2016, the State filed a memorandum contra to the motion to suppress. On September 19, 2016, the trial court conducted a hearing on the motion.

{¶10} Via Judgment Entry of September 22, 2016, the trial court denied the motion to suppress, in part, and granted the motion to suppress, in part. Specifically, the trial court denied the motion as it pertained to the Steyr Mannlicher .40 caliber handgun, but granted the motion with regard to the Jennings .380 caliber handgun.

{¶11} Appellant State appeals, assigning as error,

I. THE TRIAL COURT IMPROPERLY RULED THAT DEFENDANT-APPELLEE WILLIAM ELSHLAGER HAD STANDING UNDER THE FOURTH AMENDMENT TO CHALLENGE THE SEIZURE OF THE STOLEN .380 CALIBUR JENNINGS PISTOL.

II. THE SEIZURE OF THE .380 CALIBUR JENNINGS PISTOL SATISFIED THE REQUIREMENT OF THE PLAIN VIEW EXCEPTION TO THE WARRANT REQUIREMENT, AND THUS THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SUPPRESSED THE .380 JENNINGS PISTOL AS EVIDENCE.

III. IN THE ALTERNATIVE, THE PISTOL WAS REASONABLY SEIZED PURSUANT TO THE COMMUNITY CARETAKING EXCEPTION TO THE WARRANT REQUIREMENT, AND THUS SHOULD NOT HAVE BEEN SUPPRESSED.

IV. EVEN IF A FOURTH AMENDMENT VIOLATION OCCURRED, THE OFFICER ACTED IN GOOD FAITH IN SEIZING THE .380 CALIBER JENNINGS PISTOL, AND APPLYING THE EXCLUSIONARY RULE IN THIS CASE WOULD NOT CREATE THE DETERRENT EFFECT NECESSARY TO JUSTIFY SUPPRESSION OF THE EVIDENCE.

I.

**{¶12}** In the first assignment of error, the State maintains the trial court erred in granting Appellee's motion to suppress the .380 caliber Jennings pistol as Appellee lacks standing to contest the seizure of stolen property.

**{¶13}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of

witnesses." *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

**{¶14}** Recently, this Court held in *State v. Nicholson,* Stark App. No. 2016CA00210, 2017-Ohio-2825,

> The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide for "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate "are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 111 S.Ct., 1982 (1991); *State v. Tincher*, 47 Ohio App.3d 188, 548 N.E.2d 251 (1988).

> If the government obtains evidence through actions that violate an accused's Fourth Amendment rights, that evidence must be excluded at trial. *State v. LeMaster*, 4th Dist. No. 11 CA3236, 2012–Ohio–971, 2012 WL 762542, ¶ 8. "'Standing is defined as a party's right to make a legal claim or seek a judicial enforcement of a duty or right.'" *Coleman v. Davis*, 4th Dist. No. 10CA5, 2011–Ohio–506, 2011 WL 345772, ¶ 16, citing State ex rel.

*Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.*, 124 Ohio St.3d 390, 922 N.E.2d 945, 2010–Ohio–169, at ¶ 19, quoting *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 875 N.E.2d 550, 2007–Ohio–5024, at ¶ 27 (other internal quotation omitted). "'Whether established facts confer standing to assert a claim is a matter of law.'" *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 858 N.E.2d 330, 2006–Ohio–6499, at ¶ 23, quoting *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 846 N.E.2d 478, 2006–Ohio–954, at ¶ 90. "'We review questions of law de novo.'" *State v. Elkins*, 4th Dist. No. 07CA1, 2008–Ohio–674, at ¶ 12, quoting *Cuyahoga Cty. Bd. of Commrs.* at ¶ 23; see, also*, Bridge v. Midas Auto Experts # 322*, 8th Dist. No. 94115, 2010–Ohio–4681, at ¶ 6 ("The question of standing is an issue of law, which we review de novo.") (citation omitted).

Modern understandings of the Fourth Amendment recognize that it serves to protect an individual's subjective expectation of privacy if that expectation is reasonable and justifiable. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421 (1978*); Katz v. United States*, 389 U.S. 347, 381, 88 S.Ct. 507 (1967) (Harlan, J., concurring); *State v. Buzzard*, 112 Ohio St.3d 451, 860 N.E.2d 1006 (2007).

Moreover, an individual must have standing to challenge the legality of a search or seizure. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421 (1978); *State v. Coleman*, 45 Ohio St.3d 298, 544 N.E.2d 622 (1989). The person challenging the search bears the burden of proving standing. *State v.*

*Williams*, 73 Ohio St.3d 153, 652 N.E.2d 721 (1995). That burden is met by establishing that the person has an expectation of privacy in the place searched that society is prepared to recognize as reasonable. Id; *Rakas* v. *Illinois*, supra.

**{¶15}** A defendant lacks standing to challenge a search where he has no legitimate expectation of privacy in the place searched or the contents seized. *United States v. Hargrove*, 647 F.2d 411 (4th Cir. 1981); see *Rakas v. Illinois*, 439 U.S. 128, 143-44 & n. 12, 99 S.Ct. 421, 430-31 & n.12, 58 L.Ed.2d 387 (1978); *United States v. Hensel,* 672 F.2d 578 (6th Circuit 1982). A defendant must have a possessory interest in the items seized and also an expectation of privacy in the area searched.  *Rakas v. Illinois* (1978), 439 U.S. 128, and *United States v. Salvucci* (1980), 448 U.S. 83,

**{¶16}** In *State v. Dubose*, 164 Ohio App. 3d 698, 706, 843 N.E.2d 1222, 1229, 2005-Ohio-6602, ¶¶ 35-36, the Court held,

[A] person must also have some legitimate personal interest in the place searched or thing seized in order to assert that his or her Fourth Amendment privacy rights were violated. Although this is often referred to as the requirement that the person have "standing" to raise the constitutional violation, there is no additional legal analysis that is applied to determine the person's standing. *The only question to be answered is whether the person had a legitimate expectation of privacy in the place*

*searched or item seized.* If a person has no possessory or property interest in the place searched or item seized, it is often difficult to establish that a legitimate expectation of privacy has been violated. In these situations it is sometimes said that the person has no standing to raise the constitutional violation.

The principle that rights assured by the Fourth Amendment are personal rights which may be enforced by exclusion of evidence only at issuance of one whose own protection has been infringed by the search and seizure *is best analyzed by focusing on extent of particular defendant's rights under Fourth Amendment; rather than on any theoretically separate, but invariably intertwined concept of standing. Rakas, at Note 5.*

A person aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by search of a third person's premises or seizure of property does not have any of his Fourth Amendment rights infringed. *Rakas*, supra at syllabus.

(Emphasis added.)

**{¶17}** A defendant need not prove legal ownership of the item to have standing to challenge its seizure. Rather, the law requires only possession. The State may, without legal contradiction, simultaneously maintain a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation. *Rakas*, supra*; U.S. v. Salvucci*, 448 U.S. 83 (1980). It must be asked whether the defendant had an expectation

of privacy in the area searched, and also whether the defendant has a possessory interest in the item seized. *Salvucci*, supra.

**{¶18}** A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. *U.S. v. Jacobsen*, 104 S.Ct. 1652, 466 U.S. 109 (1984). A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interest in that property. Id.

**{¶19}** In this case, Appellee clearly demonstrated a Fourth Amendment interest in the premises searched because he owned and occupied the residence. We find Appellee also demonstrated a legitimate Fourth Amendment interest in the property seized, as he demonstrated a possessory interest in the item at the time of the search. Appellee had the firearm in his possession, under his dominion and control, in his attic, stored in a cardboard box. He clearly had domination over the firearm at the time it was seized.

**{¶20}** Possession may be either actual or constructive. A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. *State v. Dillard*, 173 Ohio App. 3d 373, 387–88, 878 N.E.2d 694, 705, 2007-Ohio-5651, citing, *State v. Mabry,* Montgomery App. No. 21569, 2007-Ohio-1895. Dominion and control may be established solely through circumstantial evidence. *State v. Barnett,* Montgomery App. No. 19185, 2002-Ohio-4961, 2002 WL 31105398, ¶ 11.

**{¶21}** At the suppression hearing, the State argued the Jennings firearm was not subject to exclusion due to the plain view criminality of the firearm, and the good faith exception. At the conclusion of the hearing on Appellee's motion to suppress, the trial court held,

THE COURT: All right. First of all, regarding the possessory interest issue, the Court will find that the defendant had a possessory interest because it's his house. There isn't any --- ***

And the Court's satisfied that the weapon that appeared with the sign-out sheet, the evidence sign-out sheet, was contraband and certainly could have been seized at that point, even though it was outside the parameters of the search warrant.

***

THE COURT: All right. What's been marked—what's Defendant's Exhibit A1 relates specifically to Mr. Elschlager's residence and the search of his residence, ***

Officer Parks testified that they went into the office area and the exhibit, State's Exhibit 1, showed a plastic bag with a weapon in it with what he knew to be an evidence tracking form for their evidence, what's common for law enforcement officers in terms of keeping chain of custody on evidence, and he knew right away that that shouldn't be there in terms of being contrary to protocol and had suspicion that also it—he possessed that in violation of receiving stolen property statute and by virtue of it being in his home probably tampering with evidence. So they seized that weapon and also there was a highway patrol representative there, Anne Ralston, who acknowledged it shouldn't be there.

Then they found another weapon in the attic storage area, there was an unopened case of ammunition that was – had the address of the

Ohio State Highway Patrol Academy, and then an open box of ammunition, and next to that was a cardboard box which had the .380, Jennings .380, in it and they further seized that weapon.

There was some testimony about seizing the weapon in anticipation of a CPO, but there wasn't any CPO or TPO issued at the time of the search.

The Court finds that the officer certainly could have gone back to the Court and asked for a further warrant for that item and/or the ammunition, and they didn't do that. It exceeds the search parameters set forth in the warrant, and because the warrants have to be, you know, particular and specific and this was, and this was something that's not—by looking at it, you wouldn't know whether that was a personal weapon or not a person weapon.

So with that, the Court will grant the motion in part, suppress the use of that weapon as far as evidence, being the Jennings.

Suppression Hearing, Tr. at 76; 80-83.

**{¶22}** The trial court's Judgment Entry states,

The Jennings weapon discovered in a box in the attic was not on the search warrant. Possession of the weapon did not appear to be a violation of any law as contraband. That evidence was suppressed as evidence.

**{¶23}** We find the trial court correctly held Appellee had standing to challenge the search of his residence and the seizure of the Jennings firearm. The first assignment of error is overuled.

II.

**{¶24}** In the second assigned error, the State maintains the trial court erred in granting the motion to suppress as to the Jennings firearm, as the firearm was seized in plain view.

**{¶25}** Under the plain view exception to the search warrant requirement, police may seize items in plain view during a lawful search, if (1) the seizing officer is lawfully present at the place from which the evidence can be plainly viewed; (2) the seizing officer has a right of access to the object itself; and (3) the object's incriminating character is immediately apparent. *Horton v. California* (1990), 496 U.S. 128, 136–37. The Ohio Supreme Court has held the "immediately apparent" requirement of the "plain view" doctrine is met when police have probable cause to associate an object with criminal activity. *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 496 N.E.2d 925. In ascertaining the required probable cause, police officers may rely on their specialized knowledge, training and experience. *Id.*

**{¶26}** We find the incriminating nature of the Jennings firearm was not immediately apparent to the officers conducting the search. The officers did not have probable cause to associate the firearm with a criminal purpose. Rather, Appellee carried a firearm as part of his job responsibilities. Multiple firearms were located in the residence, as well as, ammunition.

**{¶27}** Unlike the Steyer Mannlicher firearm, the Jennings firearm did not have an evidence tag putting the officers on notice the firearm was unlawfully possessed. The firearm was not immediately apparent as incriminating evidence or contraband, and testimony at the suppression hearing established the officers could not readily identify the firearm as a stolen possession.[3]

**{¶28}** The second assignment of error is overruled.

III.

**{¶29}** In the third assignment of error, the State asserts the seizure of the Jennings firearm was justified under the community caretaking exception. Specifically, the State maintains the firearm was properly seized as a protection order was likely to be granted in favor of A.B., and the officers seized the firearm to assure A.B.'s safety and the safety of the community as a whole.

**{¶30}** In *State v. Leak,* 145 Ohio St. 3d 165, 169–70, 47 N.E.3d 821, 827–28, 2016-Ohio-154, the Ohio Supreme Court held,

> This function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441, 93 S.Ct. 2523. In the interest of public safety, as part of the community-caretaking function of police, vehicles are frequently taken into police custody. *Opperman,* 428 U.S. at 368, 96 S.Ct. 3092, 49 L.Ed.2d 1000, citing *Cady* at 441, 93 S.Ct. 2523. Examples of vehicles taken into custody as part of law enforcement's community-caretaking role include those that have been in accidents, those that violate parking ordinances, those that are

---

[3] We find the circumstances surrounding the seizure of the Steyr Mannlicher pistol add little, if anything, to support the suspicion the Jennings firearm was illegally possessed.

stolen or abandoned, and those that cannot be lawfully driven. *See Id.* at 368–369, 96 S.Ct. 3092. The authority of police to seize and remove from the street vehicles that impede traffic or threaten public safety and convenience is beyond challenge. *Id.* at 369, 96 S.Ct. 3092.

Inventory searches performed pursuant to standard police procedure on vehicles taken into police custody as part of a community-caretaking function are reasonable. *Id.* at 373, 96 S.Ct. 3092.

**{¶31}** Here, the search was not conducted as part of a vehicle or inventory search, nor was the search pursuant to an issued civil protection order or temporary protection order. While the State provided testimony as to the established procedure of the Washington County Sheriff's Department relative to the seizure of firearms when a protection order has been granted, a protection order had not been issued or heard by a court. Rather, the Washington County Sheriff's Office obtained the warrant for recovery of items stolen from A.B., including a silver ring and bottle of perfume. The search warrant provided for the seizure of other documents and records, electronic or otherwise, pertaining to menacing by stalking, telecommunications harassment, abduction, unlawful restraint, theft, receiving stolen property and breaking and entering. The warrant does not provide for the seizure of firearms.

**{¶32}** We do not find the Jennings .380 pistol properly seized pursuant to the community caretaking exception to the warrant requirement.

**{¶33}** The third assignment of error is overruled.

IV.

{¶34}  In the fourth assignment of error, the State argues the officers acted in good faith in seizing the .380 Jennings firearm; therefore, the exclusionary rule should not apply.

{¶35}  In *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, the United States Supreme Court established a good faith exception to the exclusionary rule. The *Leon* court held:

This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. (Footnote omitted.) In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.' *Id.* [*Stone v. Powell*], 428 U.S. [465], at 498, 96 S.Ct. [3037], at 3054 [49 L.Ed.2d 1067 (1976) ] (BURGER, C.J., concurring). Penalizing the officer for the magistrate's

error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations. (Footnote omitted.)

We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion. We do not suggest, however, that exclusion is always inappropriate in cases where an officer has obtained a warrant and abided by its terms. '[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' *Illinois v. Gates,* 462 U.S. [213], at 267, 103 S.Ct. [2317], at 2347 [76 L.Ed.2d 527 (1983)] (WHITE, J., concurring in judgment), for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.' *United States v. Ross,* 456 U.S. 798, 823, n. 32, 102 S.Ct. 2157, 2172, n. 32, 72 L.Ed.2d 572 (1982). Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, cf. *Harlow v. Fitzgerald,* 457 U.S. 800, 815–819, 102 S.Ct. 2727, 2737–2739, 73 L.Ed.2d 396 (1982), (Footnote omitted) and it is clear that in some circumstances the officer (Footnote omitted) will have no reasonable grounds for believing that the warrant was properly issued.

{¶36}  It is undisputed the officers herein acted in justifiable reliance on the search warrant in conducting their search of the premises. The warrant has not been proven to be defective or insufficient. Rather, the officers seized the Jennings firearm maintaining the plain view criminality of the item. The warrant did not provide for seizure of firearms. Accordingly, the seizure does not fall within the parameters of the good faith exception.

{¶37}  The fourth assignment of error is overruled.


{¶38}  The judgment of the Delaware County Court of Common Pleas is affirmed.


By: Hoffman, J.

Delaney, P.J.  and

Wise, Earle, J. concur